CASE 20—CONTEMPT—JUNE 15.

# Nienaber, et. al. v. Tarvin, Judge.

APPEAL FROM KENTON CIRCUIT COURT.

1. CONTEMPT—APPEALS.—Where, in a civil action, an order is made directing one of the parties to the litigation to perform some act for the benefit of the other, the failure or refusal to perform the act is a civil contempt and an appeal lies to this court from a judgment or order punishing the recalcitrant party for such failure or refusal.

2. STATUTES—CONSTRUCTION OF—ACT DIRECTING COURT TO BE HELD AT COVINGTON.—The act of February 1, 1850, providing for holding Circuit Court at Covington contained a section providing that "so soon as the council give notice to the judge that the court room, clerk's office, and jail are ready for said court, and the judge, upon personal inspection, shall be satisfied thereof, he shall direct the clerk to remove the papers aforesaid, and open an office in said city." Under this section it is held by the court:

First—That it is the duty of the city council of the city of Covington to maintain a court room, clerk's office and other offices with suitable furniture for holding and conducting the business of the Kenton Circuit Court in that city.

Second—That the Kenton Circuit Court has not power to enforce that obligation by a rule as in case of contempt, but that the remedy is by indictment for non-performance of the duty.

O'HARA & ROUSE, CHAS. H. FISK AND H. C. HALLAM FOR APPELLANTS.

C. J. AND W. W. HELM FOR APPELLEE.
   (Transcript and briefs not in the clerk's office.)

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

A. Nienaber, Joseph L. Ruh, H. B. Huelefeld, M. Messingsheager, Charles Avery, Fred C. Niemeyer, and John Dorsel, seven of the twelve members of the board of coun--

cilmen of the city of Covington, appeared before this court, and moved for an order requiring James Tarvin, judge of the Kenton circuit court, to grant an appeal from, and permit them to execute a bond superseding, a judgment rendered in said court February 8, 1898, whereby they were committed to the jail of Kenton county, at Independence, there to remain until such time as they, or either of them, should indicate to the court a willingness to at once comply with orders of that court, hereafter mentioned; and, the motion having been sustained, the judgment is before this court for revision.

Two transcripts have, by agreement, been filed, one certified to by bystanders, the other by the clerk of the court, though they do not materially differ in respect to any matter we need consider.

January 10, 1898, Judge Tarvin addressed a communication to the general council, requesting a committee be appointed to confer with him in regard to alterations of the court building, that more room might be provided. January 14th a committee, consisting of members of both branches of the general council, met him, and arranged for a meeting on January 17th, at the Globe Furniture Company, in Cincinnati, at which time and place, the committee, Judge Tarvin and the circuit clerk being present, Judge Tarvin, without conferring with the committee, selected and ordered certain furniture for the circuit judge's room and the master commissioner's office, and the circuit clerk selected the furniture for his office. January 18th the court made an order directing the general council to provide forthwith for the payment of such furniture and appliances as in the discretion of the judge of the court are necessary and proper for the rooms of the circuit judge,

Nienaber, et. al., v. Tarvin, Judge.

circuit clerk, and master commissioner, and that a com-
mittee be appointed to confer with the circuit judge in ref-
erence to making some arrangements giving more room to
the officers of circuit clerk and commissioner. It was
further ordered that the council make provision for the
refurnishing of the Circuit Court room, and for rearrange-
ment of same after conferring with the circuit judge, and
as he may determine. January 22d the following order
was made: "The general council of the city of Covington
has not seen fit to regard the order of this court. It ap-
pears to this court that certain records of this court, be-
longing in the custody of the clerk of this court, and con-
sisting of order books and papers and other books, are not
in the actual custody of said clerk, because of lack of room
and proper place to keep them; and, it appearing that said
records are in immediate danger of destruction or loss, it
is now ordered that the clerk of this court forthwith take
all the steps necessary to the secure keeping of said re-
cords, at any expense necessary, at the cost of the city of
Covington." January 31st the following order was made:
"The city of Covington, the general council, and the mem-
bers thereof, are ordered to obey the order of this court
made January 18, 1898, on or before February 1, 1898. The
sheriff will serve a copy of this order on the city of Coving-
ton, president of the board of aldermen, and president of
board of councilmen, to-day." On the evening of the same
day, at a regular meeting of the board of councilmen, a re-
sponse to the court's order of January 18th was adopted, as
follows: "First. It is not the duty of the city of Covington
to supply any furniture or conveniences for said court
room, or any office named in said order of the 18th inst.
Second. In the judgment of the respondent, the court room

and offices mentioned in said order are, and were at the time said order was made, supplied with the furniture and conveniences necessary to the proper holding of said court, and the proper discharge of the duties of the incumbents. Third. It is not the duty of the city of Covington to supply furniture or conveniences for either the judge's office or the master commissioner's office. Fourth. In the judgment of the respondent, the court room and clerk's office are, and were at the time said order was made, supplied with the furniture and conveniences necessary to the proper holding of said court and the proper discharge of the duties of the incumbents of said offices. Fifth. The respondent makes part hereof and reiterates the statements of the action of each body of said general council, and its committees and members, touching the matter of supplying said furniture and conveniences, adopted by the board of councilmen on the 24th inst., and the board of aldermen on the 27th, and adds that said action was taken with a view of showing to said court and its orders all possible respect consistent with the lawful rights and duties of this respondent, of which rights and duties the respondent was not then fully advised." February 2d an order was made directing the clerk to issue a rule requiring the mayor of the city of Covington, and each member of the board of councilmen and board of aldermen of said city, to appear at Independence, on February 7, 1898, to show cause why they, and each of them, should not be punished for contempt in refusing to obey the court's orders of January 18th and January 31st. It was further ordered that the Kenton Circuit Court would on and after Monday, February 7, 1898, and until further orders, be held at Independence, because as recited in the order, the city of Covington, by the general council, had

refused to obey said orders, and there is no proper place in
the city of Covington in which to hold Circuit Court, and a
pressing necessity and emergency exists requiring the hold-
ing of the court at this time at some place in the county,
and the court house here at Independence is the only other
court house in the county.  Accordingly, Monday, February
7th, court was opened at Independence, and an order made
.that it be there held until further orders; and appellants,
being then in open court, were asked separately whether
they would obey said orders, and declined to answer, as
they did again when called upon in the afternoon of the
same day.  But at the same time they tendered, by an at-
torney, to the court, a written response to the rule, in which
they stated, in addition to what was set forth in the re-
sponse of January 31st, heretofore referred to, that in every
action taken or omitted, and every vote given, in reference
to said matter, they acted and voted upon the advice of an
attorney at law consulted by them in good faith; that they
consider the furniture already purchased for the judge's
room, and for the offices of clerk and master commissioner,
as extravagantly varied and expensive, and could not, with-
out violating their oaths, vote to charge the said city with
the full payment thereof; and  that they are willing  to
promptly consider and act upon the request of said court,
as to some rearrangement of the court room, upon being in-
formed by an order of the nature and character of improve-
ments or alterations, as desired by said court, they having
a reasonable allowance of time to consider thereof, and, if
required by law to do so, to make reasonable contract there-
for.  That response was not, however, permitted to be filed.
February 8th appellants, again appearing, were adjudged
in contempt, and committed to jail.  It appears that the

mayor of the city of Covington was willing to obey said orders, and that the board of aldermen and five members of the board of councilmen were also willing, and so voted, and for that reason, as stated in an order of February 5th, the rule issued February 2d was discharged as to them.

We think the response of the general council shows a distinct refusal to obey the orders of January 18th and 31st, and, if those orders be valid and enforceable, the rule upon appellants, who were still recusant, to show cause why they should not be punished for contempt, regularly followed.

Whether the judgment appealed from was proper or erroneous involves the inquiry: First, is there a legal obligation on the city of Covington, by its general council, to provide and keep furnished a suitable court room, clerk's office, and other offices or buildings, necessary for holding and conducting the business of the Kenton Circuit Court, in that city? And, if so, second, has that court the power to enforce the obligation by rule, as in a case of contempt? Naturally, the first inquiry is whether an appeal lies to this court from the judgment in question; but that will be considered and determined in connection with the second question.

Prior to February 21, 1850, the Kenton Circuit Court was held only at Independence, the county seat, but on that date was passed "An act to direct certain terms of the Kenton Circuit Court to be held at Covington." By the first section, it is provided "that the judge of the Fourth judicial district shall hold annually, three terms of the Kenton Circuit Court in the city of Covington, at such place as the city council *shall provide*," etc. Section 4 is as follows: "That so soon as the council give notice to the judge, that the

court room, clerk's office and jail are ready for said court, and the judge, upon personal inspection, shall be satisfied thereof, he shall direct the clerk to remove the papers aforesaid, and open an office in said city. The judge may then try all causes ready for trial, or may adjourn the court to any particular day and proceed with the trial of causes; after which the terms shall be held as hereinbefore expressed. All process issued in causes to be tried or pending in said court or in executing its judgments and decrees, shall be returnable at Covington."

As by the first section of that act it was provided that the Kenton Circuit Court should be held in the city of Covington, at such place only as the city council should provide, and, according to the fourth section, not until the city council should give notice to the judge that the court room, clerk's office, and jail were ready for said court, and the judge, upon personal inspection, should be satisfied thereof, it is a reasonable implication that it was intended an obligation should rest upon the city of Covington to keep the court room and necessary offices in proper condition for holding court and transacting the business connected therewith; and that such was understood to be the meaning of that statute is shown by the fact that the city council did not only continue to do so without objection, until the present judge went into office, January 1, 1898, but at his request, made on January 10th, actually appointed a committee to confer with him in regard to alterations of the court building, at the cost of the city of Covington.

As said in 4 Bl. Comm. 284: "Contempts punishable are either *direct*, which openly insult or resist the powers of the courts, or the persons of the judges who reside there, or else are consequential, which (without such gross insolence

·or direct opposition) plainly tend to create a universal dis-
regard of their authority." Contempts were thus classified
in City of ,Newport v. Newport Electric Light Co., 92 Ky.
445, [17 S. W., 435]: "Those which are *in facie curiae*, or
direct,   or   those   which are constructive,   or   conse-
quential, or,   as   said   by   some   writers,   civil   and
criminal."   And   the   following   citation   from   Rapalje
on   Contempts   was   there   made:   "Civil   contempts
are those *quasi* contempts which consist in failing to do
something which the contemnor is ordered by the court to
do for the benefit or advantage of another party to the pro-
·ceedings before the court, while criminal contempts are all
those acts in disrespect of the court or of its process, or
which obstruct the administration of justice, or tend to
bring the court into disrespect."   It was from an· order
punishing for a direct, not consequential, contempt, that
it was held in Johnston v. Com., 1 Bibb, 598, cited by
counsel, an appeal to this court would not lie, and of which,
when committed against one court, another may not judge.
But it can not properly be, nor has it been, held by this
court, that a judgment or order of a lower court, requiring
one party to perform a service or pay money for the benefit
or advantage of another party to a proceeding before it,
even though disobedience involves punishment for con-
tempt, is not subject to revision; for such order is usually
made, not so much for the mere purpose of sustaining and
vindicating the dignity and authority of the court itself, as
for enforcing the legal rights of the respective parties, as
they .may be; and, inasmuch as it should always
be based upon a judicial determination of the
legal issue between parties, that one against whom the
judgment or order was rendered is unquestionably entitled

to an appeal.    Such was the character of order made in the
case of City of Newport v. Newport Electric Light Co., an
appeal from which was sustained by this court.

In this case, though there appears of record to be but one
party, the city of Covington, represented by appellants,
there are in fact two parties in interest,—one the Common-
wealth, for whose benefit, and in whose interest, it is neces-
sary that the court house be properly furnished and kept;
the other, the city of Covington, upon which it is sought by
this proceeding to impose the burden of taxation for that
purpose.   Whether the city of Covington is bound to per-
form the service, or pay requisite amount of money for that
purpose, is a legal question appellants had a right to have
adjudicated, but which never has been duly or in the man-
ner required by law determined; for, if it was not so bound,
the Kenton. Circuit Court had no authority whatever to
order the general council to appropriate money for that
purpose, much less to imprison the members thereof for a
failure to do so.   So, there being involved on this appeal a
question, not only of legal liability of the municipality to
pay money, but the liberty of citizens, we do not hesitate to
revise the order complained of.

Whether that order be proper or erroneous involves the
inquiry, in whom, by law, is vested discretion as to the
character of buildings and furniture necessary, and amount
of money required to be appropriated, in order to the hold-
ing of Kenton Circuit Court in Covington?   Although by
section 4 of the act of 1850 it was provided the judge should,
upon personal inspection, determine when the court room,
clerk's office, and jail were ready for said court, it can not
be properly implied that power was intended to be given
him to thereafter enlarge, change, or refurnish the court

room, offices, and jail, at his discretion, and without the concurrence of the general council, as to character of such alterations and kind of furniture needed, or as to amount of money to be appropriated therefor; for such implication would involve vesting in him arbitrary power over the property and liberties of the citizens of Covington, and disregard of that other time-honored principle, that taxpayers have the right, through their representatives, to determine when, and in what amount, money collected by taxation shall be expended. Therefore the city of Covington is legally bound to keep the court room and offices connected therewith in such condition as that the records and papers may be safely preserved, and the business of the court properly transacted. The discretion as to the character and kind of fixtures, furniture, and improvements needed, and as to the amount of money required to be appropriated therefor, is vested solely in the general council of Covington, to be exercised at its peril. So, although the Circuit Court may not, by the summary proceedings now complained of, coerce performance, by the general council, of that obligation, the members of that body may be indicted for nonperformance of it, and punished, if it appear upon the trial of the prosecution they have not kept the court room, offices connected therewith, and jail in proper condition. Moreover, now that the legal duty of the city of Covington has been judicially ascertained, popular intelligence and sense of right may be relied on to provide a reasonably safe, commodious, and comfortable court room and other offices necessary for the transaction of the business of the court.

A question has been raised and argued by counsel in respect of the power of the judge to remove the sitting of

the court from Covington to Independence, as was done, but need not be here and now decided. The judgment and orders appealed from are reversed, and cause remanded, with instruction to dismiss the proceeding.