THE STATE ex rel. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. BLAND et al., Judges, *in re* Contempt Proceedings against SCHUBACH; THE STATE ex rel. CHICAGO & ALTON RAILWAY COMPANY v. BLAND et al., Judges, *in re* Contempt Proceedings against GILDERSLEEVE; and THE STATE ex rel. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. BLAND et al., Judges, *in re* Contempt Proceedings against GILDERSLEEVE.

**In Banc, June 1, 1905.**

1. **CONTEMPT: Violation of Injunction: Appeal.** From a judgment of a circuit court punishing a ticket broker for contempt for violation of an injunction order forbidding and restraining him from engaging in the business of selling the return part of commutation railroad tickets, the contemner has a right of appeal.

2. ———: **Punishment: Inherent Power of Court.** Every constitutional court of general common law jurisdiction has the inherent power to punish for contempt, and cannot be shorn of that power by statute.

3. ———: ———: **Sui Generis Proceeding.** Contempt cases are *sui generis.* The proceeding is summary, there is no constitutional right to trial by jury, and no change of venue will lie, and one court may not try a case of contempt against another.

4. ———: **Appeal: Statutory Right.** The right of appeal in either civil or criminal cases did not exist at common law, but is a mere creature of statute.

5. ———: ———: ———: **Information in Injunction.** By no sort of allowable legal construction can the complaint filed in a court, informing it of the violation of its injunction orders though termed "information," be held to mean the "information" or "indictment" referred to in the statute allowing an appeal "in all cases of final judgment rendered upon any indictment." Hence, it follows that if a judgment punishing a contemner for contempt for violating the injunction order of a court is to be considered a criminal case in the technical sense, he has no right of appeal from that order.

6. ———: Ancillary to Injunction: Statute. The statute providing that if any person against whom a writ of injunction shall issue shall disobey the same the court may commit him to jail or take bail to answer for the contempt "and in the meantime to observe and obey the injunction," was meant to make the contempt proceeding ancillary to and in aid of the injunctive process, so that the *status quo* might be preserved.

7. ———: ———: Appeal: Civil Case: Statute. Relators brought suit by injunction in the circuit court to restrain certain ticket brokers from engaging in the business of selling the return part of a certain kind of commutation tickets, and after hearing, a temporary injunction was granted, and the broker ordered not to further engage in that business. Afterwards, during the life of the injunction, on complaint of relators (the railroads) the circuit court cited the brokers for contempt in disobeying and disregarding said injunctive order, and after hearing they were found guilty and punished by fine and imprisonment, and from this judgment they appealed. *Held*, that the injunctive order which the brokers violated was issued for the benefit of the relators, and the contempt proceeding for a violation of that order was ancillary to and substantially in a civil cause, and, hence, the statute providing that "any party to a suit aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal . . . from any final judgment in the case" applies, and the brokers have a right to appeal from the judgment holding them guilty of contempt.

## Prohibition.

WRIT DENIED.

*Edward S. Robert, Douglas W. Robert, Johnson, Allen & Richards, McKeighan, Wood & Watts, Martin L. Clardy* and *J. M. Dickinson* for relators.

(1) The power to punish for contempt is inherent in all superior courts of record. State ex inf. v. Shepherd, 177 Mo. 205; State ex rel. v. Ryan, 182 Mo. 349; In re Debs, 158 U. S. 594; Bessette v. W. B. Conkey Co., 194 U. S. 326; Anderson v. Dunn, 6 Wheat. 226; Ex parte Kearney, 7 Wheat. 39; Hayes v. Fischer, 102 U. S. 122; Ex parte Chetwood, 165 U. S. 443; Interstate Commerce Commission v. Brinson, 154 U. S. 489;

Cooper v. People (Colo.), 6 L. R. A. 430; Smith v. Speed (Okla.), 55 L. R. A. 402; Cossart v. State, 14 Ark. 538; Bean v. State, 22 Ark. 149; Railroad v. Williams (Fla.), 33 So. 991; In re Teitelbaum, 84 App. Div. 351; State v. McKinnon, 8 Ore. 487. (2) At common law a commitment for contempt by a court having jurisdiction to order the commitment could not be revised or controlled by any other court, whether by appeal or writ of error, or by any extraordinary writ, such as certiorari, mandamus, habeas corpus, or in any manner whatever. State v. Schneider, 47 Mo. App. 671; Ex parte Goodin, 67 Mo. 646; Brass v. Crosby, 3 Wilson 188; State v. Lucksinger, 79 Mo. App. 293; Passmore-Williamson Case, 36 Pa. St. 20; New Orleans v. Steamship Co., 20 Wall. 387; Cossart v. State, 14 Ark. 538; Cooper v. People (Colo.), 6 L. R. A. 430; 7 Am. and Eng. Ency. Law (2 Ed.), 34; People v. Hockley, 24 N. Y. 75; Easton v. State, 39 Ala. 551; Larrabee v. Selby, 52 Cal. 506; Lockwood v. State, 1 Ind. 161; Durham v. State (Iowa), 6 Clark 246; Church v. Muscatine, 2 Iowa 69; Watson v. Thomas (Ky.), 6 Litt. 248; State v. Ouachita Parish, 31 La. Ann. 116; Phillips v. Welch, 12 Nev. 158; Crommer v. Dickmann, 180 Mo. 148; Kirk v. Milwaukee, etc., Co., 26 Fed. 501. (3) "The Legislature has no power to take away, abridge, impair, limit, or regulate the power of courts of record to punish for contempts." State ex inf. v. Shepherd, 177 Mo. 235; State ex rel. v. Ryan, 182 Mo. 349; Smith v. Speed (Okla.), 55 L. R. A. 402. (4) Contempts are civil or criminal. The contempt in the case at bar is criminal. Ex parte Crenshaw, 80 Mo. 447; State ex rel. v. Horner, 16 Mo. App. 195; State v. Chiles, 22 Wall. 157; 5 Crim. Law Magazine, 172; Philips v. Walsh, 11 Nev. 187; New Orleans v. Steamship Co., 20 Wall. 387; State v. Lucksinger, 79 Mo. App. 294. (5) There is no statute of Missouri authorizing an appeal in such a case as this. (a) The statute concerning appeals in civil cases does not apply.

R. S. 1899, sec. 806. (b) Although the contempt in this case is in its nature criminal, the statute concerning appeals and· writs of error in criminal cases does not apply. R. S. 1899, secs. 2696, 2697. (6) If any statute can be construed to permit an appeal in such a case as this, it is unconstitutional. State ex inf. v. Shepherd, 177 Mo. 205; State ex rel. v. Ryan, 182 Mo. 349; see, also, authorities cited under point 3. (7) Section 1617, Revised Statutes 1899, which limits the power of the court to punish for contempts, is unconstitutional. State ex inf. v. Shepherd, 177 Mo. 205; State ex rel. v. Ryan, 182 Mo. 349.

*Chester H. Krum, Bond & Bond* and *Edward J. O'Brien* for respondents.

(1) An order imposing a sentence of fine, or imprisonment upon a person for a contempt of court, is in the nature of a judgment convicting him of a criminal offense; and when he is imprisoned upon such an order, he is said to be imprisoned in execution. Ex parte Kearney, 7 Wheat. 345; State ex rel. v. Horner, 16 Mo. App. 191; Ex parte O'Brien, 127 Mo. 488. In the last-named case, the language employed is much stronger: "Contempt of court is 'a specific criminal' offense and the fine imposed is a judgment in a criminal case. The adjudication is a conviction and the commitment in consequence thereof is execution." (2) Where the proceeding for contempt is instituted by a party to enforce a civil remedy, the decision of the court, whether for or .against the accused, possesses the essential characteristics of a final judgment, dispositive of a substantial right. State ex rel. v. Horner, 16 Mo. App. 191; Bessette v. Conkey Co., 194 U. S. 324. (3) Where the proceeding is thus remedial as for a contempt, the final judgment or order by which the court ends the proceeding and exhausts its jurisdiction is subject to revision by appeal. State ex rel. v.

Horner, 16 Mo. App. 194; State v. Schneider, 47 Mo. App. 669; State v. Lucksinger, 79 Mo. App. 289; Glover v. Ins. Co., 130 Mo. 184; Romeyn v. Caplis, 117 Mich. 449; Register v. Minnesota, 8 Minn. 214; Witter v. Lyon, 34 Wis. 564; Ross v. Griffin, 53 Mich. 5; State v. Miller, 23 W. Va. 801; Matter of Davis, 81 N. C. 72; In re Pierce, 44 Wis. 432; Matrons v. Kearney, 79 N. Y. 496; Snowman v. Haynd, 57 Me. 397; People v. Dwyer, 90 N. Y. 402; Ex parte Wright, 65 Ind. 504; Mullin v. People, 13 Gratt 57; Wells v. Commonwealth, 21 Gratt. 500; Turner v. Commonwealth, 2 Metc. 619; Bessette v. Conkey Co., 194 U. S. 324; Ganley v. State, 13 Neb. 445; Neinaber v. Tarvin (Ky.), 46 S. W. 513; Livingston v. Swift, 23 How. Pr. 1. (4) The proposition is indisputable in Missouri. (a) "Any party to a civil suit aggrieved by any judgment in any civil cause, from which an appeal is not prohibited by the Constitution, may take his appeal to a court having appellate jurisdiction . . . from any final judgment in the case." R. S. 1899, sec. 806. (b) "In all cases of final judgment rendered upon any indictment an appeal . . . shall be allowed." R. S. 1899, sec. 2696. Upon the proposition, if there is anything in the fact of repeated adjudication by all the courts of appellate jurisdiction, the right of appeal has been determined beyond room for controversy.

LAMM, J.—In 1903 the Burlington company commenced two proceedings in equity in the circuit court of St. Louis, one against Schubach and one against Gildersleeve, and the Alton company also commenced in said court its proceedings in equity against Gildersleeve—the life of each bill being for injunctive relief restraining said Schubach and Gildersleeve from dealing in the return-trip part of a certain class of railroad tickets issued severally by relators to accommodate travel to and from the Louisiana Purchase Exposition at St. Louis, and sold at reduced price in considera-

tion of being non-transferable. (See a case on all-fours, Schubach v. McDonald, 179 Mo. 163, where the averments and a copy of a similar bill are set forth with particularity.)

Such proceedings were had in each of said causes as resulted in temporary restraining orders against said defendants severally. While said temporary injunctions were in force and after they had been served upon defendants, plaintiffs in said suits, relators here, in their own several names and through their own counsel, filed in said circuit court, during its June term, 1904, verified complaints in said causes, causing the court to be informed that said Gildersleeve and Schubach, after injunction bonds filed and approved and after service of the preliminary restraining orders, violated the terms thereof by carrying on the business of ticket brokerage by buying, selling and dealing in World's Fair mileage, excursion and passenger tickets and return coupons thereof, and commutation passenger tickets or return coupons thereof, which were and had been issued by the plaintiffs severally for passage over their respective railroads, which said tickets were sold below regular schedule rates and under contracts with the original purchasers entered upon such tickets and signed by the original purchasers making them non-transferable and void in the hands of any other person than such original purchasers. Said complaints also caused the court to be informed of divers and sundry specific instances of violations of said orders, in names, tickets, dates and amounts, and prayed the court to make an order requiring said Schubach and Gildersleeve to appear and show cause why all and every of them should not be punished for contempt of court in violating said injunction.

Thereupon Gildersleeve and Schubach were ordered cited to appear and show cause, and they appeared and filed returns through counsel.

Thereupon the matter of said complaints, citations

and returns came on for hearing, and thereafter the court entered its judgments, finding and adjudging Schubach and Gildersleeve guilty of contempt and adjudging Gildersleeve in one case to be committed to and be imprisoned in the common jail in the city of St. Louis for a period of thirty days from two o'clock, p. m., on the 2nd day of August, 1904, until twelve o'clock, p. m., on the first day of September, 1904, or until he be discharged according to law; and in the other case adjudging him to pay to the sheriff of the city of St. Louis for the use of the public schools the sum of $300, together with the costs incurred in the proceeding, before the 1st day of October, 1904, and if said fine and costs be not paid by the 1st day of October, 1904, that the body of said Gildersleeve be attached by the said sheriff and that said Gildersleeve be committed to and imprisoned in the common jail in the city of St. Louis for a period of thirty days from the 1st day of October, 1904, or until he shall be discharged according to law; and in the other case adjudging Schubach to pay a fine of $250 and the costs of the proceeding, to be paid to the clerk of said court forthwith to the use of the public schools, and if said fine is not paid forthwith, then the said Schubach to be committed to and imprisoned in the common jail in the city of St. Louis until such fine is paid, and further adjudging said Schubach to be committed to and imprisoned in the common jail in the city of St. Louis for a period of ten days, or until he shall be discharged according to law—execution being stayed until October 2nd.

Afterwards proceedings were had in all said contempt cases, whereby the Honorable Charles C. Bland, one of respondents, as a judge of the St. Louis Court of Appeals, granted appeals to the St. Louis Court of Appeals, approved recognizances tendered and stayed all proceedings pending said appeals.

Thereupon relators filed here their three several suggestions for Prohibition, in substantially common

form, setting forth the pendency of the injunction pro-
ceedings in the St. Louis Circuit Court, the issue of the
temporary restraining orders, the filing and approval
of the injunction bonds, the service of the restraining
orders, the complaints causing the court to be informed
of the violation of said orders, the citations and rules
to show cause, the returns to said rules, the hearings
had thereon in said circuit court, the several judgments
finding said Schubach and Gildersleeve contemners and
adjudging fines and imprisonments against them, the
granting of appeals by Judge BLAND, and then (select-
ing one as a sample of all) the petition proceeds as fol-
lows, in part:

"Said petitioner further states that the proceed-
ings instituted as aforesaid by the Hon. Charles C.
Bland, Richard L. Goode and Albert D. Nortoni, judges
as aforesaid, of the St. Louis Court of Appeals, are a
direct encroachment upon the authority and jurisdic-
tion of the circuit court of the city of St. Louis, in that
no appeal was allowable from any order in contempt
thereof, or committing any person for contempt of
court in disobeying an order of said St. Louis Circuit
Court, and that under the Constitution and the laws it
is made the care of this court that the said Hon.
Charles C. Bland, Hon. Richard L. Goode and Hon. Al-
bert D. Nortoni, judges of the St. Louis Court of Ap-
peals aforesaid, and the said St. Louis Court of Ap-
peals, keep within the bounds and limits of the juris-
diction prescribed to them by the laws of the State; and
that the St. Louis Court of Appeals has no jurisdiction
in said matter, for the reason that there is no law pro-
viding for an appeal from a judgment for contempt."

On the filing of said petitions for prohibition and
an exhibition here of exemplifications of the records of
the circuit court and of Judge BLAND's orders grant-
ing appeals, this court issued a preliminary rule to
show cause in each case.

Thereafter respondents filed their returns to said rules in common form as follows:

"Now come Charles C. Bland, Richard L. Goode and Albert D. Nortoni, and making return to the writ of prohibition herein, show unto the court here, that in the matter concerning which they have been cited to appear, they proceeded with and were proceeding in the proper exercise of the appellate jurisdiction in such matters conferred upon them by law, and that there is no valid reason in law why the rule, heretofore made upon them, should be made absolute. Wherefore they pray, that the said rule may be discharged."

The causes were heard together in this court, were argued orally by distinguished counsel with candor and ability and submitted on briefs, in which the only question presented is whether a judgment of a superior court of record, fining and imprisoning a defendant for violating a temporary injunction, is appealable?

If such judgment be not appealable, then the attempt of the St. Louis Court of Appeals to draw to itself jurisdiction is in excess of its power and the writ will lie. If, *per contra*, such judgment be appealable, then the St. Louis Court of Appeals has jurisdiction and is proceeding within the constitutional orbit of its power and the writ will not lie.

This court, *ex gratia*, permitted the Illinois Central Railroad Company through its counsel, McKeighan, Wood & Watts, to appear, file a brief and argue orally, *amici curiae*.

It may simplify and aid the consideration of the case to state the several contentions of counsel, thus:

By relators' counsel, proper, it is contended that not only is there no statute allowing a contemner an appeal from a judgment finding him guilty of contempt, but that if such statute exist, it is unconstitutional, in that, by submitting such matter to review in another court, it would impinge upon the inherent common law

power of a superior court of record to punish for contempt.

By one of the counsel appearing *amicus curiae* it is conceded that a statute allowing an appeal in such case would be constitutional, but it is contended that no such statute existed in this State.

By respondents' counsel it is conceded that the right to an appeal, if any, must be spelled out in the statute, and it is contended that when such right is so located, no constitutional or inherent right in a lower court is interfered with in giving it force, and, furthermore, respondents' counsel put their finger on statute law which, they insist, grants the right to appeal.

Contempts have been divided into civil and criminal, into direct and constructive, into contempts which affect alone the dignity of the court and those which affect the beneficial rights of a party litigant, and there is a class of contempts in which both elements appear. There are many contempts which are punishable as crimes *malum in se,* and others *malum prohibitum,* and which are of such a dual sort as to subject to punishment by distinctively criminal process as well as by contempt proceedings. In many cases contempts are designated as ''criminal,'' where an attempt at classification may not have been in mind, but the court had in view, by the use of the word, merely an epithet which might fill a wholesome office as a deterrent.

An examination of the authorities will show that the line of demarkation between the different classes of contempts is often shadowy and does not run true, and that the learning on the question abounds with fine as well as superfine distinctions. It will be found, further, that the earlier decisions in some of the states relating to the right of review in an appellate court in contempt cases have been somewhat modified by a judicial inclination towards discovering reasons in favor of review in constructive or indirect contempts. It will be found, too, that the earlier doctrine of the Supreme

Court of the United States, denying the right of appeal or writ of error in contempt cases, has been modified by express statute and this modification has been recognized, and the statutes given effect, in the later decisions of that tribunal. It will be found, also, that where no statutory right of appeal exists or writ of error lies, appellate courts have been astute and diligent in granting relief by inspecting records under writs of *certiorari* or *habeas corpus* (see, for instance, Ex parte O'Brien, 127 Mo. 477; State v. Leftwich, 41 Minn. 42; In re Watts and Sachs, 190 U. S. 1), and lastly it will be found that the right of appeal has been granted in many States of this Union in indirect contempt cases, and that no respectable authority exists expressly declaring such statutes unconstitutional, inoperative or void, although the point has been many times pressed by ripe counsel before great judges.

Authorities covering the whole range of the common and statute law on the subject of contempts have been industriously collated by counsel and may be found cited in their briefs. It may be possible the last word has not been spoken, but it would not advance any interest of the science of jurisprudence to now assume the bootless task of undertaking to distinguish the cases, to discriminate between them, or strive to harmonize them, when possible, or point out their discordant notes.

It is settled law that every constitutional court of common law jurisdiction has the inherent power to punish for contempt, and cannot be shorn of such power by statute. It is settled law that contempt cases are *sui generis,* that one court may not try a case of contempt against another, that contempt proceedings are summary; that there is no constitutional right to trial by jury, and that no change of venue will lie. But the right to have a review of a conviction for indirect contempt, committed by disobeying an order made in a pending civil case and punished in a lower court, by

appeal or writ of error, is a different proposition, and one by no means new in Missouri.

In considering it, it may be assumed as elementary that the right of appeal in civil cases did not exist at common law and is a mere creature of statute, and this is true of the right of appeal in criminal cases as well. [State v. Thayer, 158 Mo. 36.] The statute providing for appeals in criminal cases, section 2696, Revised Statutes 1899, reads: "In all cases of final judgment rendered upon any indictment, an appeal to the Supreme Court shall be allowed the defendant, if applied for during the term at which such judgment is rendered."

It will be seen at a glance that an appealable judgment in a criminal case is limited to a final one and to one rendered upon an "indictment." This section was held not to allow an appeal from a final conviction on an information. [State v. Brown, 153 Mo. 578.] Subsequently the latter case was overruled in Banc (State v. Thayer, supra), in which it was held that the above section, read with other sections of the Code of Criminal Procedure, should be construed as allowing an appeal from a conviction on an information. Now, in repeated adjudications we have defined the word "information" as used in our Constitution and laws. See, for example, State v. Kyle, 166 Mo. 287, in which we said: "The terms 'information' and 'indictment' as used in the Constitution, are to be understood in their common law sense [Ex parte Slater, 72 Mo. 102; State v. Kelm, 79 Mo. 515]. In the Kelm case it was held that the term 'information' as used in section 12 of article 2 of the State Constitution of 1875, was to be understood in its common law sense, that is, a criminal charge which at common law is presented by the Attorney-General, or if that office is vacant, then by the Solicitor-General of England, and in this State by the prosecuting attorneys of the respective counties who exercise the same powers as are exercised by the Attor-

ney-General or Solicitor-General of England, that is, the power to present informations under their official oaths.''

It it obvious that by no sort of allowable legal construction can the complaints in these cases informing the court of the violations of its injunctions (loosely termed informations and colloquially spoken of as such) be read to mean ''informations'' or ''indictments'' under the foregoing definition and the precision satisfactory to the legal mind, and it follows that if the proceedings against Gildersleeve and Schubach are to be considered criminal cases in the technical sense, then, whatever their remedy, it cannot be by appeal.

But this view falls short of disposing of the matter. Turning to the statute upon civil appeals, section 806, Revised Statutes 1899, the pertinent part reads: ''Any party to a suit aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal to the court having appellate jurisdiction, from . . . , or from any final judgment in the case. . .''

And the question at once arises whether the character of the judgment against Gildersleeve and Schubach will permit them to be brought within the letter and spirit of said section. If they cannot be, it unerringly results that no right of appeal exists.

The subject of contempts is recurred to in more places than one in our statutes and provisions relating to the same are practically as old as the statutes themselves. In the act regulating the granting of injunction, passed in February, 1825 (Rev. Laws 1825, p. 441, sec. 6), the following appeared:

''Sec. 6. *Be it further enacted,* that if any person, against whom a writ of injunction shall be issued, shall, after the service thereof, be guilty of a disobedience to and a breach of the said injunction, it shall be lawful for the judge granting the same, or if the same were

granted in open court, then for any judge of that court, in vacation, to issue an attachment against the said person for a contempt; and upon his being brought before the said judge, unless he shall disprove or purge the said contempt, the said judge may, in his discretion, commit him to gaol until the sitting of the court in which the said injunction is pending, or take bail for his appearance in the said court at the next term thereof, to answer for the said contempt, and abide by the order of the court thereon.''

With some immaterial changes, the same provision was preserved in Revised Statutes 1835 (p. 314, sec. 17), and in Revised Statutes 1845 (p. 581, sec. 17), and in Revised Statutes 1855 (chap. 128, art. 8, sec. 17). In Revised Statutes 1855, however, the following significant clause, somewhat indicative of the mischief struck at, was added to the section: ''*and in the meantime to observe and obey the injunction.*'' Section 17, article 8, chapter 128, Revised Statutes 1855 has been carried through the various revisions and now appears as section 3643, Revised Statutes 1899, under the title ''Injunctions.''

In 1825, in an act to establish courts of justice and prescribe their powers and duties, there appeared the following provision, relating to contempts (Rev. Laws 1825, p. 274, sec. 19):

''Sec. 19. *Be it further enacted,* that the several courts aforesaid, shall respectively have the power to punish, by fine and imprisonment, the officers of their courts respectively, for their official misconduct; and all such officers, parties, jurors, and witnesses, for any disobedience of process of the court; and any person whatsoever, for any contempt by him committed toward such court, or for any disorderly or contemptuous behavior, in their presence, while in session, or in any manner obstructing the administration of justice, and to issue attachments against any person so offending; but in no case shall the fine exceed one hundred dollars,

nor the imprisonment be for a longer period than thirty days, and until the fine and costs are paid."

The latter section, amended and amplified, has been carried through all the revisions and now appears as sections 1616, 1617, 1618, 1619 and 1620, Revised Statutes 1899, which are as follows:

"Sec. 1616. Every court of record shall have power to punish, as for a criminal contempt, persons guilty of any of the following acts, and no other: First, disorderly, contemptuous or insolent behavior, committed during its sitting, in immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority; second, any breach of the peace, noise or other disturbance, directly tending to interrupt its proceedings; third, willful disobedience of any process or order, lawfully issued or made by it; fourth, resistance willfully offered by any person to the lawful order or process of the court; fifth, the contumacious and unlawful refusal of any person to be sworn as a witness, or when so sworn, the like refusal to answer any legal and proper interrogatory.

"Sec. 1617. Punishment for contempt may be by fine or imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court; but the fine in no case shall exceed the sum of fifty dollars, nor the imprisonment ten days; and where any person shall be committed to prison for the nonpayment of any such fine, he shall be discharged at the expiration of thirty days.

"Sec. 1618. Contempt committed in the immediate view and presence of the court, may be punished summarily; in other cases the party charged shall be notified of the accusation, and have a reasonable time to make his defense.

"Sec. 1619. Whenever any person shall be committed for any contempt specified in this chapter, the particular circumstances of his offense shall be set forth in the order or warrant of commitment.

"Sec. 1620. Nothing contained in the preceding sections shall be construed to extend to any proceeding against parties or officers, as for contempt, for the purpose of enforcing any civil right or remedy."

On the material question as to whether or not an indirect or constructive contempt for violating an injunctive process is to be considered technically a criminal case, or whether it is merely quasi-criminal, as this court held in State ex rel. v. Dillon, 96 Mo. l. c. 62-3, and affects principally the beneficial rights of a party litigant, it will be instructive to consider the last clause of section 3643, Revised Statutes 1899, viz.: "and in the meantime to observe and obey the injunction." Giving full effect to that clause makes it clear to our minds, when read in connection with the rest of the section, that while the idea of punishment is in the eye of the law, yet there is injected the preservation of the *status quo* in favor of the plaintiff as possibly the gist and heart of the matter. In other words, the very life and purpose of the bill is to be preserved by the proceeding in contempt, thus making the contempt proceedings ancillary and in aid of the objects of the principal suit, while, at the same time, preserving the dignity of the court and the orderly administration of justice.

In some of the cases this is made the line of demarkation between civil and criminal contempts. If a forbidden act has been wholly performed by the violation of an injunction order, if thereby it was put out of the power of the defendant to restore the condition of things existing at the time of the service of the injunction, there might be room for the conclusion that punishment for the violation could be of no benefit to the plaintiff and would be considered solely punitive retribution for a contumacious insult to the court and the majesty of the law. This distinction this court had in mind in Ex parte Crenshaw, 80 Mo. 447.

It is argued that the acts for which Gildersleeve and Schubach were punished were completed acts, that

they had put it out of their power to undo these acts and therefore the punishment meted out to them was solely for a past offense and affecting only the dignity of the court, but we are constrained to think this view too narrow, because, the relief sought by the principal suits was directed to the *business* of Schubach and Gildersleeve. That business was ticket brokerage, dealing in forbidden tickets. The isolated sale of a few tickets was a matter of little pith to plaintiffs. If that were all they had involved, the game, to use a homely saying, was hardly worth the candle, there was a great cry and little wool, the mountain labored and brought forth a mouse; but, *contra*, the continuous dealing in such tickets, the *business* of so dealing, was the gravamen of their complaints. This idea is carried forward into the after proceedings and the very citations for contempt and the orders and judgments of the court finding Schubach and Gildersleeve guilty, show the heart of the matter was the illegal business they were carrying on and the menace to plaintiffs' rights arising from this continuation. The State did not, *eo nomine,* move in the matter. Plaintiffs as private citizens moved and the prime object of plaintiffs in so moving for citations for contempt and in procuring convictions therefor, was to preserve the life of their injunctions and to prevent a continuation of defendants' illegal business by putting defendants *in terrorem.*

Justice BREWER, in Bessette v. Conkey Co., 194 U. S. 324, considers this question, quoting from In re Nevitt, 117 Fed. 448, and formulates the distinction we have in mind thus:

"Proceedings for contempts are of two classes, those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court

has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts and the people are interested in their prosecution. The latter are civil, remedial and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. [Thompson v. Railroad, 48 N. J. Eq. 105, 108; Hendryx v. Fitzpatrick (C. C.), 19 Fed. 810; Ex parte Culliford, 8 Barn. & C. 220; Rex v. Edwards, 9 Barn. & C. 652; People v. Court of Oyer and Terminer, 101 N. Y. 245, 247; Phillips v. Welch, 11 Nevada 187, 190; State v. Knight, 3 S. Dak. 509, 513; People ex rel. v. McKane, 78 Hun 154, 160; 4 Bl. Comm. 285; 7 Am. and Eng. Ency. Law, 68.] A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings. [See, also, Rapalje on Contempts, sec. 21.]

"Doubtless the distinction referred to in this quotation is the cause of the difference in the rulings of various State courts as to the right of review. Manifestly if one inside of a court room disturbs the order of proceedings, or is guilty of personal misconduct in the presence of the court, such action may properly be regarded as a contempt of court, yet it is not misconduct in which any individual suitor is especially interested. It is more like an ordinary crime which affects the public at large, and the criminal nature of the act

is the dominant feature. On the other hand, if in the progress of a suit a party is ordered by the court to abstain from some action which is injurious to the rights of the adverse party, and he disobeys that order, he may also be guilty of contempt, but the personal injury to the party in whose favor the court has made the order gives a remedial character to the contempt proceeding. The punishment is to secure to the adverse party the right which the court has awarded to him. He is the one primarily interested, and if it should turn out on appeal from the final decree in the case that the original order was erroneous, there would be in most cases great propriety in setting aside the punishment which was imposed for disobeying an order to which the adverse party was not entitled.

"It may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. A significant and generally determined feature is that the act is by one party to a suit in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court rather than a disregard of the rights of the adverse party."

Referring again to section 806, Revised Statutes 1899, and attending to its language, it will be observed that "any party to a suit aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal to a court having appellate jurisdiction from . . . , or from any final judgment in the case . ." It must be admitted that Gildersleeve and Schubach were parties to a suit; they allege they were aggrieved by a judgment, and it must be admitted it was a final judgment, and it was rendered ancillary to and hence substantially "in" a "civil cause."

Construing this statute, the St. Louis Court of Appeals in State ex rel. v. Horner, 16 Mo. App. 191, held

that where a proceeding is instituted by a party to enforce a civil remedy, it assumes the essential characteristics of an adverse proceeding and that the decision of the court, by whatever name it may be called, and whether it may be in favor of or against the accused, shows the essential characteristics of a final judgment dispositive of a substantial right, and that while it is a rule of common-law procedure that an appeal does not lie from a judgment in a proceeding for a criminal contempt, yet it is generally held that where a proceeding is a remedial proceeding as for contempt the final judgment or order by which the court ends the proceeding and exhausts its jurisdiction is subject to a revision by an appeal.

In State v. Schneider, 47 Mo. App. l. c. 673, Judge ROMBAUER, after reviewing the authorities and citing Revised Statutes 1889, section 2246 (now sec. 806, supra), said: "We must, therefore, conclude that there is nothing in the mere fact that the final judgment sought to be reviewed is one in a proceeding for a contempt, which prevents its review on appeal in this State where, as in this case, the contempt is not direct, and the appeal in no way interrupts or delays the proceedings in the main cause."

In State v. Lucksinger, 79 Mo. App. 289, it was said: "The power to punish contempts was deemed essential to the existence and authority of the court, and hence granted as a necessary incident in its establishment, and was equally available whether the contempt was direct or constructive, or, as otherwise designated, civil or criminal. In either case the judgment of a court of competent jurisdiction was final and conclusive. [Rapalje on Contempts, secs. 21, 22.] In this and many of the States the rule of the common law on this subject is not enforced in its full rigor. With us appeals or writs of error, though not permitted in cases of direct contempts, may be taken from a final judg-

ment in a matter of constructive contempt, to comply with an order for the inspection of papers.''

In Glover v. Insurance Co., 130 Mo. 1. c. 184, this court, through GANTT, J., said: "It is true that every superior court of record at common law is the sole judge of contempts offered or committed in its presence against its dignity and authority and may punish the same summarily, and no other court can review its decisions in such cases, unless an appeal is expressly allowed by the statutes, but this principle is applicable only to those direct contempts which interfere with the orderly and effective administration of justice by judicial proceedings in which appeals if sanctioned would seriously impair the authority of the court against which they were committed, and deprive it of that respect without which it is impotent to perform its high function, and has not obtained in constructive contempts, as in the case at bar. .In many cases similar to this the right of appeal has long been recognized and sanctioned in many jurisdictions, and the necessity therefor we think can hardly be questioned, if appeals are allowable in any case.''

Sustaining the doctrine thus formulated the learned judge cited a formidable array of authorities, to which may be added: Nienaber v. Tarvin, 104 Ky. 149; Livingston v. Swift, 23 How. Pr. 1; State ex rel. v. Gray (Ore.), 70 Pac. 904; Strong v. Randall, 177 N. Y. 400; Witter v. Lyon, 34 Wis. 564; Snowman v. Harford, 57 Me. 397; Ex parte Wright, 65 Ind. 504; Wells v. Commonwealth, 21 Gratt. 500; Turner v. Commonwealth, 59 Ky. (2 Metc.) 619; State ex rel. v. Pierce, 51 Kan. 241.

While the subject is not free from doubt and embarrassment, yet under the reasoning of the foregoing cases and the liberal construction to be applied to statutes penal in their character, and bearing in mind that the law does not concern itself so much with mere names as it does with the essence of things, and realiz-

ing that it is the glory of our law to be diligent in preventing stealthy approaches upon the liberty of the citizen and to have a glow of generous warmth in its preservation, we are persuaded to adopt the view that the judgments punishing Gildersleeve and Schubach were remedial in their character, were primarily for the benefit of relators and intended to prevent future encroachments upon the rights of relators involved in the subject-matter of the litigation, and that the right of appeal existed *per legem terrae* as from judgments in civil causes. That the punishment also related to past sales in isolated instances and also involved the dignity of the court below, should not solely dominate the situation, make the contempts criminal in their character, and prevent an appeal.

It is eloquently contended by counsel that to allow an appeal in cases of this sort would destroy the inherent power of a superior court of record to protect itself and the law from insult, and would subject courts to contumely and superciliousness, but it is not pointed out to us how the inherent power of the court to punish for contempt is involved in sustaining the right of review in constructive contempts. The power to render judgment in any matter within its jurisdiction is also an inherent power of which a constitutional court may not be shorn, but the right of an appellate court to review that judgment when rendered and annul it, if erroneous, has not hitherto been allowed as any impairment of the inherent power of such court to render it.

This court stands committed to the protection of the inherent powers of all constitutional courts to punish for contempt. [State ex inf. v. Shepherd, 177 Mo. 205.] But we are now asked to take one step farther, and to hold that any statute permitting a review of a judgment, *nisi*, in constructive contempt is unconstitutional. This step we decline to take. May it not be possible that we may better protect the inherent pow-

ers of all courts and the respect due them and their judgments, by at the same time protecting the rights of citizens to have judgments subjecting them to fines and imprisonments reviewed and reversed, if found arbitrary or otherwise erroneous?

The preliminary rule is discharged and the writ denied.

All concur, except *Burgess, J.,* not sitting.