## Commonwealth v. Phoenix Hotel Company.

(Decided January 29, 1914.)

### Appeal from Fayette Circuit Court.

1. Game and Birds—Exposing for Sale—Construction of Statute.— Under Sec. 1951 of the statute any person exposing for sale within the prohibited season birds or game protected by the statute violates the statute without reference to whether the birds or game so killed were caught in this state or out of it.

2. Game and Birds—Exposing for Sale—Application of Words—Hotel Keeper—The words "exposing for sale" in the game and bird statute apply to a hotel or restaurant keeper who serves prohibited game or birds to his guests within the prohibited season.

3. Criminal Law—Indictment—Statutory Offense.—When the statute describes an offense in such a manner that it is only necessary that the indictment should follow the statute if a pleader incorporates in the indictment words not found in the statute and that are not necessary to describe or constitute the offense, it is not necessary that the Commonwealth should sustain by evidence these unnecessary averments. They will be treated as surplusage.

4. Criminal Law—Indictment for Exposing Game or Birds for Sale—Evidence.—An indictment under Section 1951 for unlawfully exposing game or birds for sale need only charge, after describing the game or birds so exposed, that they were prohibited game or birds and exposed for sale within the prohibited time, and to sustain a conviction it is only necessary that the averments of the indictment should be proved.

5. Criminal Law—Principals in Misdemeanors—Separate Indictment Against Each.—All persons engaged in the commission of misdemeanors are principals, and there may be under a separate or a joint indictment a conviction against each.

6. Corporations—Liability for Misdemeanor—Manager of Corporation.—Where a corporation violates a penal statute, it may be punished under this statute, and the manager of the corporation who participates in the unlawful act may likewise be prosecuted and punished.

7. Witnesses—Privilege of When Evidence Might Incriminate Him.—A witness cannot be required to give evidence that might incriminate him, and this privilege is not confined to a defendant in a criminal prosecution but it extends to every witness in every case, both civil and criminal, and protects him in every court in which he may be giving evidence either in his own behalf or in behalf of some other person.

8. Witnesses—Privilege of When Evidence Might Incriminate Him.—The privilege is a personal one that the witness may waive, but the court should, when it appears that the witness does not understand his privilege, admonish the witness who is asked a

question, the answer to which might incriminate him, that he need not answer it unless he chooses to do so.

9. Witnesses—Privilege of When Evidence Might Incriminate Him. —The privilege does not belong exclusively to the witness, and it is for the court to determine when the question is raised, whether the witness shall answer the question or not, and if it appears that no prosecution against the witness can be based on his evidence, as when the offense is barred by time, the court should require him to answer.

10. Witnesses—Privilege of When Evidence Might Incriminate Him —Testimony on Former Trial.—A witness is not estopped by his previous statements voluntarily made, either in court or out of it, from claiming his privilege when introduced as a witness. The privilege attaches to the witness in each particular case, and whether he may claim it or not is to be determined without reference to what he said in testifying on some other trial or on a former trial of the same case, and without reference to his declarations made at some other time or place.

JAMES GARNETT, Attorney General; J. G. DENNY, JOHN R. ALLEN, Commonwealth Attorney; C. H. MORRIS and MAURY KEMPER for appellant.

GEO. C. WEBB and SHELBY, NORTHCUTT & SHELBY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The Phoenix Hotel Company, a corporation operating the Phoenix Hotel at Lexington, Ky., was indicted for exposing quail for sale to its guests in the hotel within the period that the taking and killing of quail is prohibited by law. The indictment was found under section 1951 of the Kentucky Statutes, reading:

"Any person exposing for sale any of the animals or birds intended to be protected by this law within the periods for which the taking or killing thereof is hereby prohibited shall, for each animal or bird so exposed for sale, be subject to the same penalty as herein provided for the unlawful killing or taking of such animal or bird."

There are several sections in the chapter relating to game and birds, but section 1944 is the one we must look to for the penalty, and it reads: "No person shall catch, kill, or pursue with such intent, or have the same in possession after it has been caught or killed, any quail, partridge or pheasant, between the first day of January and the fifteenth day of November in each year."

As it is made unlawful by section 1944 to catch, kill, or pursue, or have in possession after it has been caught or killed, quail between· the first day of January and the fifteenth ·day of November, so is it made unlawful by section 1951 to expose quail for sale between January first and November fifteenth.

On a trial of the case before a jury, the Hotel Company was acquitted by direction of the trial judge, and the Commonwealth prosecutes this appeal not only to obtain a reversal of the judgment but to secure a decision that will aid in the correct and uniform administration of the criminal law in its application to cases like this.

The indictment charged that the quail alleged to have been exposed for sale were a shipment of quail received by the Phoenix Hotel Company from a firm doing business in Chicago, Ill., from which place the quail were shipped, and the first insistence of counsel for the Hotel company is that the general demurrer interposed to the indictment should have been sustained. The argument in this behalf is rested on the ground that the statute under which the indictment was found only makes it unlawful to expose for sale quail that are caught or killed in this State, while the indictment here under consideration avers that the quail exposed for sale were shipped into this state from Illinois, and this being so, the indictment did not charge any offense.

Sections of the chapter under which this indictment was found have come before this court in two cases. First, in the case of the Commonwealth v. Chase Davidson Co., 109 Ky., 236, and again in Phoenix Hotel Co. v. Commonwealth, 153 Ky., 507, and in each of these cases it was held to be a violation of section 1951 to expose for sale quail within the prohibited season, without reference to whether they were caught or killed in this State or out of it. But it is said that so much of the opinion in each of the cases as so held was obiter dictum and should not be treated as binding on the court in this case where the construction of the statute is directly drawn in question.

Ordinarily we would be disposed to answer the argument that the section now under consideration only refers to quail caught and killed in this State, by a simple reference to the cases mentioned, holding otherwise, but in view of the earnestness with which counsel press it

on our attention that the precise question here involved was not presented in the other cases, we will re-examine the matter in dispute and re-state our conclusion.

The law relating to game and birds is found in chapter 57 of the Kentucky Statutes, which chapter contains sections taken from five different acts passed at different times. It is only necessary, however, in disposing of the question we have, to consider the act of 1894. This act is found in sections 1939 to 1954, inclusive, excluding sections 1944a, b and c. It will be observed in reading the statute that the words "it shall be unlawful for any person within this State to catch, kill or pursue with such intent *  *  * or have the same in possession after it has been caught or killed" are found in each of the sections 1939 to 1947, inclusive, and that section 1950 merely declares that "possession" within the prohibited period of any of the animals or birds intended to be protected shall be prima facie evidence that the animal or bird was unlawfully caught or killed, and so we correctly held in the Phoenix Hotel case that the word "possession" used in section 1950 and the preceding sections naturally referred to the possession of game or birds that had been killed in this State, because the word "possession" was used in these sections in connection with the other words in such a way as to show a legislative intent to limit the unlawful possession to birds or game killed in this State.

But section 1951 does not contain any words that would reasonably limit its application to game or birds caught and killed in this State. It specifically makes it unlawful for any person to expose for sale within the prescribed period "any of the animals or birds intended to be protected by this law." This prohibition takes no notice of the place where the animals or birds are killed. It is not material whether they were killed within or without the State. The offense is complete by the exposure for sale within the prohibited season of any of the animals or birds mentioned in the preceding sections of the chapter.

This being our construction of the section, it follows that the indictment stated an offense under section 1951.

Another question in respect to the indictment, in its effect upon the sufficiency of the evidence may here be disposed of. As before stated, the indictment charged

that the quail exposed for sale were purchased from Geo. S. Sloan & Sons, of Chicago, Ill., and shipped by them from that point to the Phoenix Hotel Co., and it is suggested that before a conviction could be had under this indictment there must be evidence tending to show not only that quail were exposed for sale by the Hotel Company, but that the quail so exposed were a part of the shipment received from Sloan & Sons.

But to constitute a good indictment under this statute, it is only necessary to charge that the accused exposed for sale an animal or bird named in the statute, describing it by name, within the period for which the taking or killing of the animal or bird so described was prohibited, fixing the date of exposure within the prohibited time. The exposure of the prohibited animal or bird within the prohibited time is the gravamen of the offense, and it is not necessary to aver when or where the animal or bird so exposed was caught or killed, or where it came from, or whether it was caught or killed within this State or out of it. This being so, the averment in the indictment that the birds exposed for sale were received from Sloan & Sons of Chicago, Ill., was not essential to either describe or constitute the offense and may be classed as surplusage. Treating these averments as surplusage, it was not necessary that the Commonwealth should have offered any evidence to support these immaterial averments. We so held in Commonwealth v. Hightower, 149 Ky., 563, saying:

"When the statute describes an offense in such a manner that it is only necessary that the indictment should follow the statute, if the pleader incorporate in the indictment words not found in the statute and that are not necessary to describe or constitute the statutory offense, it is not required that the Commonwealth should sustain by evidence these unnecessary averments or that the court should incorporate them in the instructions. It is only necessary that the evidence should be sufficient to constitute the offense described in the statute, and the instructions should be confined to a statement of the acts constituting the offense as found in the statute."

Under this rule of law it is only necessary that the Commonwealth should show the sale of or exposure for sale of the prohibited bird or animal described in the indictment within the prohibited season. In this connec-

tion we might add that the evidence in the record, independent of the evidence it was avowed Joseph Skain would give if permitted to testify, was sufficient to take the case to the jury, as Longmoor testified that in the prohibited season he ordered, paid for and was served as a guest of the hotel with quail, unless it be as argued by counsel, that serving quail in this manner is not exposing it for sale within the meaning of the statute.

We are unable to perceive why the words "exposing for sale" should be given the limited meaning ascribed to them by counsel. These words of the statute should be construed reasonably and naturally and according to their customary usage. So construed a quail is as fully exposed for sale by a hotel or restaurant when offered to a guest for compensation as it would be if exposed for sale by a dealer in game or any other person for compensation. The guest at the hotel or restaurant who is served with quail for compensation as certainly purchases it and the proprietor of the hotel or restaurant as certainly exposes it for sale and sells it as if it were purchased for compensation from a dealer who had it for sale and was carried home by the purchaser to be served on his table. It would be giving to the statute a strained and unnatural meaning, and one that would defeat in a large measure the purpose of its enactment, to hold that a hotel keeper who furnished to his guest for 75 cents a quail did not expose it for sale. It would be saying that the merchant who offered for sale and sold birds would be guilty of exposing them for sale under the statute, but that the hotel keeper who did exactly the same thing would not be, and there is no room in this statute for a discriminating construction like this.

We have been referred to some authorities in which the words "exposing for sale" were construed to have a meaning somewhat different and perhaps more limited than we have given them, but in these cases the words were construed with reference to the object intended to be accomplished by their use in the statute construed by the court, and with a view of giving effect to the statute. But the fact that the same word or words may be given one meaning in one statute and a different meaning in another statute does not serve to show any conflict in the cases or establish any fixed rule of definition.

It is a rule of general application that words used in a statute shall be given, if it can reasonably be done, such a meaning as will effectuate the purpose of the statute, and so it is a common thing to find different meanings ascribed by courts to the same words, depending on the sense in which they were intended to be used by the framers of the legislation. As illustrating the many different meanings of the word "expose" and the different senses in which it may be used and the different applications that may be made of it, it is only needed to turn to its meaning in Webster's dictionary. And with these different meanings in mind it will readily be seen that there is no real conflict in the opinions of the courts in which may be found the application of different meanings to the word "expose" or the words "exposing for sale."

The remaining question relates to the evidence of Joseph Skain. It appears that Joseph Skain, at the time the matters under investigation occurred, was the manager of the Phoenix Hotel Company. He was introduced as a witness in behalf of the Commonwealth, and it was sought to show by his evidence, for the purpose of establishing beyond any doubt the guilt of the defendant, that the Hotel Company had furnished to its guests for compensation quail within the prohibited season. Skain, under advice of counsel, declined to answer any question that might have a tendency to establish the guilt of the Hotel Company, upon the ground that his answers would incriminate him as manager of the hotel and subject him to the penalty prescribed for a violation of the statute, and the court sustained him in this right.

If Skain, as manager of the hotel, permitted quail to be served to the guests of the hotel by employes during the prohibited season, there can be no doubt that he subjected himself to the penalties of the statute. The fact that the corporation operating the hotel was also liable to prosecution, did not exempt Skain from liability, nor did the fact that a prosecution was pending against the hotel deny the Commonwealth the right to also proceed against Skain as manager. In misdemeanor offenses like this all persons who participate in the violation of the statute are principals, and under a separate or a joint indictment there may be a separate conviction of each. The prosecution of one of the principals does not

bar the prosecution of the other principals. The Hotel
Company, as a corporation, could be indicted and pun-
ished as a principal, as was held in Commonwealth v. Pu-
laski County A. & M. Ass'n., 92 Ky., 197, and the man-
ager of the hotel could likewise be indicted and prose-
cuted as a principal.

So that if the testimony Skain was called on to give
might incriminate him, he had the right to claim his
privilege, and the court correctly allowed him to do so.
The right to claim this privilege is a part of the funda-
mental law of the State and has been recognized in num-
erous cases. This privilege is not confined to a defend-
ant in a criminal prosecution who may not be compelled
to give evidence against himself, but it extends to every
witness, in every case, both civil and criminal, and pro-
tects him in every court in which he may be giving evi-
dence, either in his own behalf or in behalf of some other
person.

The privilege, however, is a personal one that the wit-
ness may waive if he chooses to do so. But it is a whole-
some practice, in keeping with the spirit of the law, that
the court should, on its own motion, admonish the wit-
ness who is asked a question, the answer to which might
incriminate him, that he may or may not answer it as
he chooses, and this admonition the court should always
offer when it appears that the witness does not under-
stand his privilege and is not advised of his rights by
counsel.

It is a privilege, however, the exercise of which does
not belong exclusively to the witness, for, although the
witness may claim this privilege, if the court, upon con-
sidering the matter in all the aspects presented, con-
cludes that the answer would not incriminate the witness,
as for example where a prosecution against the witness
concerning the matter he was inquired about was barred
by time, he may be compelled to respond, although insist-
ing upon his privilege. This privilege is only intended
for the protection of the witness and to save him from
giving evidence that might be used in a prosecution
against him, and of course when it is made to clearly ap-
pear that there can be no prosecution of the witness
growing out of the facts about which he is called on to
testify, the reasons for allowing him the privilege no
longer exist and the witness cannot then claim that his

answer might incriminate him. In Howard v. Commonwealth, 118 Ky., 1, the court had this matter under consideration, and quoting with approval from Roberson's Criminal Law, said:

"It is a rule that no person is bound to answer any question if the answer thereto would, in the opinion of the trial judge, have a tendency to subject the witness, or the wife or husband of the witness, to any punishment, penalty, or forfeiture. And the witness may claim the protection at any stage of the inquiry, whether he has already answered the question in part or not at all. If the fact to which he is interrogated forms but one link in the chain of evidence which is to connect him, he is still protected. The privilege is one personal to the witness, and to be exercised by him alone, and counsel will not be allowed to make the objection. Nor can the witness be made to explain how he might be criminated by the answer, as this would strip him of the privilege which the law allows him. But it is not enough for the witness to say that the answer will criminate him. He is not the sole judge of the fact. It is for the court to determine from all the circumstances whether there is really reasonable ground to apprehend danger to him from his being compelled to answer."

It is said, however, by counsel for the Commonwealth that the court committed error in sustaining Skain in his claim of privilege because Skain, on another trial and at another time, had voluntarily answered substantially the same questions that were asked him on this trial, and had made answers to these questions sufficient in themselves to incriminate him of the offense charged in this prosecution. This condition being admitted, the question is, did the fact that Skain, on a previous trial of another closely related case, involving the possession of prohibited quail within the prohibited season, gave evidence in substance the same as he was called on to give in this case and that in a prosecution for the offense here charged would unquestionably be incriminating, deny him the right to rely on his privilege when introduced as a witness on the trial of this prosecution?

In answer to this question our opinion is that a witness is not estopped by his previous statements, voluntarily made, either in court or out of it, from claiming his privilege when introduced as a witness. The privi-

lege attaches to the witness in each particular case in which he may be called on to testify, and whether or not he may claim his privilege is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place. In Cullen's Case, 24 Gratt., 624 (Va.), it was said:

"But it has been argued that this is not a proper case to recognize the privilege, because the witness has already made elsewhere a full and voluntary disclosure of the facts, and that nothing he could now say would do more to criminate him than has been already done by that statement. Conceding this to be so, we are by no means prepared to say that it answered the claim of the witness to his privilege. If, as we have held to be the case, a full discosure of the facts might tend to criminate the witness, we cannot see how that tendency is at all removed by showing that the witness had elsewhere made a statement tending to criminate him. The question before us is not what the witness may have said elsewhere, but whether, when it is apparent that a disclosure from him may tend to criminate him, he shall now, in a pending trial, be compelled to make that disclosure, although he claims his constitutional right of refusal. We do not see that his statements elsewhere have anything to do with the question." To the same effect are: Temple v. Commonwealth, 1 Matthews (Va.), 892; In re Mark, 146 Mich., 714; Overend v. Superior Court, 131 Cal., 280; Emery v. The State, 101 Wis., 627.

Wherefore, the judgment is reversed.