## Cooper v. Keyes.

(Decided Dec. 2; 1932.)

T. E. MOORE for appellant.
D. A. McCANDLESS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

C. V. Cooper has appealed from a judgment which holds that 100 shares of the capital stock of the Pursifull-Combs Corporation had been fraudulently transferred from Wm. M. Pursifull to him and subjecting this stock to the payment of Pursifull's debts.

For the purpose of obtaining credit, Pursifull, on April 4, 1928, made a statement to the National Bank of Kentucky showing he then had assets of $183,000, owed but $29,000, thus showing a net worth of $154,000, and in addition to this had $101,000 of life insurance, which had a cash surrender value of $35,000. In December, 1930, execution against Pursifull was returned "No property found." It was found he had changed this life insurance and made it payable to his wife, had given her 250 shares of stock in a building described as the Bridge building, had given her $2,500 in cash and a Packard car.

During this period, large deposits which Pursifull had in bank disappeared, and all of his property had been transferred to some one else, and to C. V. Cooper there had been transferred 100 shares of the capital stock of Pursifull-Combs Corporation, and that is the stock which the court adjudged belongs to Pursifull and of which judgment Cooper is complaining.

The principal actors in this scheme are W. M. Pursifull and C. V. Cooper, with Dewey Daniels and Dr. J. R. Tinsley playing minor parts. These four gentlemen

are brothers-in-law. Mrs. Pursifull and Mrs. Cooper are sisters of Dewey Daniels, while Mrs. Tinsley is the sister of W. M. Pursifull. Dr. Tinsley lives at Middlesboro. Mr. Cooper and Mr. Daniels live at Hazard. Mr. Pursifull formerly lived at Hazard, but sold his home in that place in the summer of 1928, and has since resided in Owensboro.

We have already said that in 1928 Mr. Pursifull by his own admission was a wealthy man. In 1928 Mr. Cooper was a man 27 years of age, and had a wife and three children to support. He had a salary of $200 per month paid him for his services in the bank by which he was employed, and was drawing $50 per month from an insurance agency for services rendered it. He owed $1,500 to the First National Bank of Hazard, $1,300 to the Bank of Vicco, $2,000 to the Lothair State Bank. He had 25 shares of stock in the First National Bank of Hazard which was then undergoing reorganization with this stock subject to a double liability. He had 20 shares of stock in the Hazard Ice & Storage Company, concerning which there is no evidence of its value, and the same is true of 20 or 25 shares of stock which he had in the Home Insurance Company. Thus it would appear that in 1928 Pursifull was rich and Cooper was poor, whereas in 1930 the situation had changed, and Cooper was rich and executions against Pursifull are returned ''No property found.''

Cooper claims to have purchased this 100 shares of stock in the Pursifull-Combs Corporation from Pursifull and to have paid $12,500 for it.

This was tried before the Hon. Lafon Allen, and he has written a very elaborate opinion, which is in this record, and from which we shall in the course of this opinion copy quite extensively. In this opinion Judge Allen says:

''A searching inquiry has been made into Cooper's affairs with a view to showing, not only that he did not pay for this stock but that he had no means with which he could pay for it.

''Cooper claims that he derived the means for making this purchase from a profit realized by him from a sale of an interest in certain oil leases in Western Kentucky, which had taken place about

five months earlier, or in October, 1928. This transaction is known in the record as the 'Petroleum Company deal.' Before discussing this transaction, I would point out that plaintiff also relies upon a transaction which I shall call the 'Inter-State Company deal' which had its beginning in August, 1929, and was consummated · in May or June, 1930. It will be observed that this was later than the transfer of stock in the Pursifull-Combs Corporation which is attacked, and it could· therefore have nothing to do with that earlier transaction. The evidence as to it is introduced chiefly for the purpose of showing the intimate relation between Cooper and Pursifull and of illustrating the manner in which Pursifull has been covering up his property. It is pointed out as a curious and, perhaps, significant circumstance that the three stockholders in the Inter-State Oil & Gas Company were, and are, Cooper, Tinsley and Daniels, each of whom is a brother-in-law of Pursifull. Pursifull does not appear, on the face of the papers, to have had any interest in this corporation but at the first meeting of its directors, he was elected 'manager' at a salary of $10,000 a year. Pending this litigation, on August 9, 1930, the company 'discontinued' Pursifull's salary of $10,000 a year, although continuing him in his office of manager and allowing him to draw on the company for his personal expenses, as well as those of the company. Plaintiff seeks to have it adjudged that the company owes Pursifull $10,000 by way of a sort of suspended salary which is affected by the attachment.

"*The Petroleum Company Deal.*—This is quite a complicated transaction but the essential aspects of it, so far as this case is concerned, are that during the summer or autumn of 1928 Pursifull told Cooper that probably there was some money to be made in purchasing the interest of one Baker in certain oil leases in Western Kentucky. Although these leases were involved in litigation between Baker and other persons, on October 3, 1928, a contract was made between Baker and Cooper by which the former sold to the latter his one-sixth interest for $1,850. After this sale had been effected, Pursifull suggested to his brother-in-law, Cooper, that probably the litigation could be com-

promised. It was compromised through Pursifull's efforts and $25,000 was paid by the Petroleum Company for the interest purchased by Cooper from Baker. * * * Cooper got about $18,750 which left him a net profit of about $18,000 as he himself says. There is a great deal of testimony as to what he did with this money. He deposited some of it in a bank in Louisville and some in a bank in Owensboro and an attempt has been made to show that most of this money found its way back to Pursifull.

"It is worth noting that, when Cooper was testifying as to this transaction, he twice made use of a plural pronoun and then corrected himself and made it singular. In his answer to question 90, he says, describing the early negotiations for the purchase from Baker, 'Later on, that option was dropped and *we*, or *I* obtained a contract and option,' etc. (Italics added). And in answer to question 106, in which he was asked about a certain payment, he said: 'While Mr. Pursifull was in Hazard about the middle of September, 1928, he said that these people had about agreed to let *us* have the property, or to let *me* have the property, rather, for less than the original option of $5,000' (italics added).

"If the plural pronouns in these answers had been allowed to stand, they would have included Pursifull.

"It was two or three months after the closing of this deal that Cooper purchased from Pursifull stock in the Pursifull-Combs Corporation. Cooper claims that before that time he had made loans to Pursifull amounting to $7,500. The cancellation of this indebtedness was part of the consideration of the purchase of the Pursifull-Combs stock. Cooper says he gave Pursifull a note for $5,000 which was not to bear interest. He claims to have paid off this note by a number of payments made to Pursifull during the next five or six months. He claims to have paid a part of this with cash which he had in his safety deposit box. It is perhaps significant that when the Pursifull-Combs Corporation was formed, Pursifull was elected president, although, according to Cooper's story, the very purpose of

the organization of that corporation was to enable him to acquire Pursifull's whole interest in that property in the form of stock. And it is also noteworthy that during this time, when Cooper had $10,000 deposited in a bank in Louisville and $8,000 in a bank in Owensboro, which enabled him to make generous loans to his brother-in-law, Pursifull, he neglected to pay off two notes of his own, one for $2,200 and the other for $1,800, which were held by two banks in Hazard and are still unpaid.

"The irregular payments claimed to have been made by Cooper to Pursifull in satisfaction of the $5,000 note bring us up to the time when the Inter-State Oil and Gas Corporation was organized.

*"The Inter-State Oil and Gas Deal.*—The company was incorporated on August 30, 1929, with a capital of $15,000. It was organized for the purpose of taking over certain oil leases (principally the 'Davis' lease) which Pursifull recommended to his three brothers-in-law, Cooper, Tinsley and Daniels. These gentlemen say that Pursifull took no stock in this corporation because he had no money for that purpose, although he had recently received more than $6,000 from the Petroleum Company deal, $7,500 in 'loans' made to him by Cooper and $5,000 more from the sale of his stock in the Pursifull-Combs Corporation. At any rate, Tinsley, Cooper and Daniels each put in $500 and each received one-third of the stock in the Inter-State Company. At the very first meeting of the board of directors they elected Pursifull as manager at a salary of $10,000 a year. At that time the company owned no property and, of course, had no income, having a paid-in capital of only $1,500. After the organization of this company, Pursifull undertook his duties of manager with such success that in the following April or May he was able to sell certain oil leases, which he had meanwhile acquired for the company, to Hupp and Duff for $17,500. In this deal, $1,000 was paid in cash. In May, 1930, apparently the balance of $16,500 was paid and deposited in the People's Bank at Hazard, since at that time Cooper drew a check on the People's Bank for $16,000 which was forwarded to the Chemical Bank and Trust Com-

pany of New York for deposit to the credit of the People's Bank. A curious thing happened with reference to this deposit. The remittance of $16,000 was receipted for by the Chemical Bank and Trust Company on May 19, 1930, but the previous deposit by the Inter-State Company was not credited to that company on the books of the People's Bank until more than a month later, or on June 27, 1930. At this time, Cooper was assistant cashier of the People's Bank and also an officer of the Inter-State Company. He is unable to explain satisfactorily how it happened that the books of the People's Bank failed to show the credit of $16,000 to the Inter-State Company for almost a month and a half after the deposit to the credit of that company had been made, and the credit was finally entered on the books of the bank only after Cisco, the cashier of the bank, insisted that the entry be made. It is obvious that the effect of this omission was to conceal an asset of the Inter-State Company during that month and a half, during which time this suit was commenced.

"It was during this time (to wit, on June 26, 1930) that the board of directors of the Inter-State Company, Cooper, Daniels and Tinsley, met and declared a 100 per cent. cash dividend on the stock of that company payable immediately and it was shortly thereafter, on the 9th of August, 1930, that the following resolutions were adopted by the directors of that company:

" 'Upon motion duly made and seconded and unanimously passed the salary of W. M. Pursifull as manager at Owensboro, Ky., be discontinued. until further orders from the board. On motion duly made and carried Mr. Pursifull is hereby authorized to continue to draw checks upon the Company for his personal expenses and expenses in connection with the corporation's business at Owensboro.'

"It seems to me that these Inter-State Company transactions, while occurring after the transfer by Pursifull to Cooper of the former's stock in the Pursifull-Combs Company, do strongly confirm the other evidence tending to show that that transfer was a mere device to conceal Pursifull's prop-

erty from his creditors. During all of this time Pursifull was being pressed by the Bank of Kentucky for the payment of this note or of his share of it, and during the latter part of that time this suit was pending against him. He had evidently made up his mind not to pay, if he could avoid it. He allowed judgment to go against him by default. His own deposition shows that he disposed of a great deal of his property about this time. Of the property listed by him in a statement which he gave to the Bank of Kentucky at the time of the making of the note sued on, he has transferred $25,000 of stock of the Bridge Building Company to his wife, the 'Stucco Building,' listed at $20,000, he now finds belongs one-half to his brother, although the origin of this interest is not clearly explained, the Broadway Apartment, listed at $15,000 is also said to belong one-half to his brother, the $15,000 residence listed at $3,000 has also been sold, his stock in the Hazard Herald Company has been sold for $1,000 the $100,000 of life insurance, listed with the Bank of Kentucky (cash surrender value $35,000) is no longer payable to his estate but to his wife and others as beneficiaries, etc.

"Upon the whole, I think it is impossible to escape the conclusion that there has been a careful and persistent effort on the part of defendant Pursifull to put his property where his creditors cannot reach it. As to the stock in the Pursifull-Combs Corporation, I think the evidence shows that this was transferred to his brother-in-law, Cooper, for that purpose and without consideration. There is much evidence tendnig to confirm this which I have not mentioned. For example, it is a singular thing that at a time when Cooper is represented as overflowing with money and Pursifull represented as being so impoverished that he could not put up $500 or even a less sum to get an interest in the Inter-State Company, it is stated by Cooper that, when it came to paying the balance of $500 due Pursifull on the sale of the Pursifull-Combs stock, Pursifull said to Cooper that he did not need the money at that time and Cooper could give him his note and pay it along as he pleased. It is obvious that in all of these transactions Pursifull was the leading spirit. It was he who discovered the op-

portunities which were turned to such good account both in the Petroleum Company deal and in the Inter-State Company deal. So great was the value of his services that his three brothers-in-law agreed to pay him a salary of $10,000 and expenses immediately after the organization of the Inter-State Company. The whole story told by Cooper and Pursifull seems to me too improbable to be believed.

"I conclude, therefore, that the transfer of Pursifull-Combs stock to Cooper should be set aside and that it should be sold in satisfaction of plaintiff's debt."

Cooper's hopes of saving this 100 shares of stock rests on what he says is an entire failure of proof to show he knew anything about Pursifull's efforts to defeat his creditors, and of course we have not found in this record any written acknowledgment by Cooper that he did know what Pursifull was doing, but the circumstances all show that he did. Of course these circumstances are just little threads here and there, but, when we gather them together, they form a cable that binds Cooper to this situation hard and fast. We would hardly expect parties engaging in such a scheme as this to send out a herald with a horn to sound alarm and make announcement of what they were to do as is frequently done when the circus comes to town. But the sort of business these men were engaged in is not conducted in circus style. It is done in closed chambers and in all quiet possible to obtain, and the rapid shift of Pursifull's fortune indicates these men worked with all the energy of the beaver and the secrecy of the mole, but unfortunately for them they have left tracks enough to disclose their operations.

On this appeal, counsel for Cooper most strenuously urges that, if it be admitted Pursifull was endeavoring to defraud his creditors, by disposing of his property before they could reach it, there was no evidence Cooper knew this; therefore he insists that, by virtue of the saving clause with which sections 1906 and 1907, Ky. Stats., conclude, this stock in his hands cannot be touched, but no one can read Mr. Cooper's deposition without being convinced he knew all about it. He had too much to conceal, he was not frank, and to question after question he refused to answer. He seemed

to have an idea that he could not be compelled to give evidence against himself, but that constitutional provision (section 11) applies only to evidence that may subject the witness to criminal prosecution. It does not apply to evidence in a civil action. Gorham v. Carroll, 13 Ky. (3 Litt.) 221; Black v. Crouch, 13 Ky. (3 Litt.) 226; Com. v. Thruston, 30 Ky. (7 J. J. Marsh.) 62; Robinson v. Neal, 21 Ky. (5 T. B. Mon.) 212; Gordon v. Tracy, 194 Ky. 166, 238 S. W. 395; Rutherford v. Com., 59 Ky. (2 Metc.) 387; Warren v. Com., 99 Ky. 370, 35 S. W. 1028, 18 Ky. Law Rep. 141; McCampbell v. McCampbell, 103 Ky. 745, 46 S. W. 18, 20 Ky. Law Rep. 552; Leach v. Com., 129 Ky. 497, 112 S. W. 595, 33 Ky. Law Rep. 1016.

The judgment is affirmed.