## Kindt et al. v. Murphy, Judge.

March 3, 1950.

Raymond L. Murphy, Judge.

396

Davies & Hirschfeld for appellants.

A. E. Funk, Attorney General, Squire Williams, Jr., Assistant Attorney General, and James B. Meadows for appellee.

STANLEY, COMMISSIONER—Denying writ.

The petitioners, James Kindt, William Collins and

Glenn Huddle, seek a writ prohibiting the Honorable Raymond L. Murphy, judge of the Campbell Circuit Court, from enforcing a rule of contempt issued against them. The case is submitted on special and general demurrers, and a motion to dismiss the petition. The pleadings are sufficient to raise the question of the propriety of issuing a permanent writ of prohibition.

The pleading is an outgrowth of a suit filed by Albert Duff, Sr., against the three petitioners and five other parties to recover $20,565.75, treble the sum alleged to have been lost by the plaintiff's son in a gambling house known as The Merchants Cafe in Newport, operated by the defendants. The three petitioners refused to appear in obedience to a subpoena and give their depositions as on cross-examination. Section 606-8, Civil Code of Practice. Their motions to quash the subpoena were overruled by the court, which directed them to give their depositions. Disregarding the order, a rule to show cause why they should not be adjudged in contempt was issued. The court ruled their response to be insufficient, made the rule absolute, and directed their arrest until each of them purged himself of contempt by giving his deposition. They plead here that they have no adequate remedy by appeal, and unless the writ issue, "great and irreparable injury" will result.

The respondent, Judge Murphy, has filed a motion to dismiss the petition on the ground that if the evidence they might give should be used against them in a criminal proceeding, they would be immune from prosecution under KRS 436.510. The plaintiff, in the original action, Duff, has been permitted to interplead and has filed special and general demurrers to the petition.

The argument of the petitioners is that the suit brought to recover alleged gambling losses under KRS 372.040 is a penal action; hence, the defendants may not, by compulsory process, be compelled to testify against themselves. Fifth Amendment, Constitution of the United States; Section 11, Kentucky Constitution.

The special demurrer to the petition is upon the ground that the court has no jurisdiction to issue a writ of prohibition because this is a civil contempt and the parties have an adequate remedy by appeal. This distinction between civil and criminal contempt is unclear

and undefined definitely. Disobedience of a subpoena issued in a civil action contains the elements of both classes of contempt. Tucker v. Commonwealth, 299 Ky. 820, 187 S. W. 2d 291. But in Crook v. Schumann, 292 Ky. 750, 167 S. W. 2d 836, we regarded similar contemptuous conduct as a civil contempt and the imposition of a fine to be an appealable order. In the present case the court directed the sheriff to take the parties into custody, but deferred commitment until a certain date that they might purge themselves of contempt by giving their depositions as ordered. An agreed temporary restraining order has heretofore been issued by this court.

This court will issue a writ of prohibition when great injustice and irreparable injury will result where the circuit court is proceeding erroneously and there is no adequate remedy by appeal. Evans v. Humphrey, 281 Ky. 254, 135 S. W. 2d 915. The present question, therefore, is whether, under the circumstances, the petitioners would have an *adequate* remedy by appeal if it should be held that the circuit court acted erroneously.

A judgment punishing one for contempt of court may not be superseded, and we suppose the parties would hardly deem the remedy of appeal adequate if kept in jail until this court could, in due course, reverse the judgment. In Lisanby v. Wilson, 280 Ky. 768, 134 S. W. 2d 651, 653, we said: ''Because of the inadequacy of the remedy by appeal in contempt proceedings, we have not hesitated to issue a writ to prohibit punishment for contempt whenever a proper case for the exercise of this power has been presented to us.''

Therefore, the special demurrer is overruled.

In considering the general demurrer and motion to dismiss, we come to the merits.

It is beyond controversy that one of the duties which a citizen owes to his government is to support the administration of justice by obeying judicial processes and orders. There is a primary duty of obedience. It is essential to judicial authority else the courts would be brought to disrepute and disregard and could not function. The petitioners, respondents below, are clearly in contempt of court by having ignored the subpoena and disobeyed the specific order of the court to appear and give their depositions. Crook v. Schumann, supra, 292

Ky. 750, 167 S. W. 2d 836. Their offered excuse is not sufficient. They merely suppose they would be required to answer questions that would be self-incriminating. Even if their supposition should be regarded as well founded, still it was not for any of them to disobey the orders of the court and then or later set himself up, though it was on advice of counsel, as the sole and absolute judge to decide whether he has been called upon to give incriminatory testimony that could be used against him in some accusation of crime. The claim of the immunity of silence cannot avail to excuse the contempt. It will be time enough to assert the claim of privilege when the embarrassing questions are asked. The court can then say whether the nature of the evidence sought to be elicited may reasonably tend to criminate the witness or furnish a link in a chain of evidence necessary to convict him of a criminal or penal offense.

We might well rest the opinion denying the writ of prohibition upon the sole ground that the judgment of contempt goes no further than to the disobedience of the process and order, which the petitioners admit. But the question of privilege and immunity is the real basis of their refusal and in order to avoid multiplicity of action, it seems well to examine the vital merits of the claim, it being implicit in the response that the parties do not intend to waive any right to constitutional immunity.

The court was of opinion that the parties would be protected by the provisions of KRS 436.510, which is that, "In any prosecution * * * for gambling, it shall be no exemption for a witness that his testimony may incriminate himself," but no such testimony "shall be used against the testifying witness in any prosecution except for false swearing." This statutory exemption is confined to any prosecution or any preliminary examination or inquiry conducted by the Commonwealth. Bentler v. Commonwealth, 143 Ky. 503, 136 S. W. 896.

We then go to the root of the matter. The argument before us is principally whether the suit to recover money lost at gambling, and, in addition, a penalty or smart money, in which case these parties were called upon to testify as on cross-examination, is a penal action or a civil action. The petitioners mantain it is the former, so that their immunity rests upon the language of Sec-

tion 11 of the Constitution of Kentucky. The amicus curiae for the respondent judge argues that the case is a civil action in which the privilege does not exist. We think the distinction is unimportant here.

The constitutional exemption from testimony under compulsion of judicial process is one of several rights of an accused person in a prosecution for crime. Section 11, a part of Kentucky's Bill of Rights, declares that, "In all criminal prosecutions the accused (person) * * * cannot be compelled to give evidence against himself." The provision of the Fifth Amendment of the Federal Constitution (applicable to the federal courts) is like it in substance and in its connection. The letter of the provision does not extend to immunity in a civil action. But from the beginning these and similar constitutional rights have been expanded by broad construction in the light of Anglo-American concept of justice. It is a safeguard of personal and civil rights of free men and a protection against the force of judicial oppression. Cf. Taylor v. Commonwealth, 274 Ky. 51, 118 S. W. 2d 140. Eighteenth Century England bequeathed us her great body of laws and justice, and so imbued our fathers with her passion for liberty that in the end America rebelled against her to retain it. It was early recognized by the courts of this country that the scope and meaning of constitutional provisions depend upon the common-law rule existing at the time of their adoption. None of the constitutions were framed for a people entering political society for the first time but for a people already familiar with the fundamental rights of man.

It was an ancient maxim of the law, expressed in Latin, that no man shall be compelled to criminate himself. As said in Jones, Commentaries on Evidence, Section 2474: "The maxim had its origin in a protest against the inquisatorial methods of interrogating accused persons which long obtained in the continental system, and which prevailed in the early history of the common law. It was founded upon no statute, but upon general acquiescence of the courts in a popular demand; and the maxim, which was a mere rule of evidence in England, has assumed the form of constitutional or statutory enactments in this country which have long been regarded as safeguards of civil liberty and as sacred and important as the privilege of the writ of habeas cor-

pus or any of the other fundamental guaranties for the protection of personal rights.''

Accordingly, it was early declared, and has since been universally held, that the privilege against self-incrimination may be asserted as of right in any ordinary civil case. Further, that to bring a person within the exemption it is not necessary that his examination as a witness should be had in the course of a penal or criminal prosecution or that such should have been commenced and be actually pending. It is sufficient if there is a law creating the offense under which the witness may be prosecuted. Wigmore, Sec. 2252, points out that this constitutional sanction is a recognition of a principle and not a new creation; that the clauses, ''the accused'' and ''in criminal cases,'' protect equally a mere witness in a civil case when the fact asked for is a criminal one, and that the privilege extends to all manner of proceedings in which testimony is to be taken. Jones, Commentaries of Evidence, Sections 2474, 2479, 2483; 58 Am. Jur., Witnesses, Sections 36, 43, 44, 45; 27 C. J. S., Discovery, secs. 5, 35, 73; 70 C. J. 719, 721; Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647.

Of particular application is our early case of Atterberry v. Knox & McKee, 38 Ky. 282, 8 Dana 282, in which it was said: ''It is well established that no one is bound to make answer to or discovery of any matter which may subject him to a penalty or forfeiture, or expose him to infamous punishment. Mitford's Pleadings, 158, &c.; Smith v. Read, 1 Atk. 526; Harrison v. Southcoat, 1 Atk. 528; Boteler v. Allington, 3 Atk. 453; Chauncy v. Tahourden; 2 Atk. 392; Bird v. Hardwick, 1 Vern. 110; Sharp v. Carter, 3 Pr. Williams, 375; Wrottesley v. Bendish, 3 Pr. Wms. 236; Chauncey v. Fenhoulet, 2 Ves. 265; Lord Uxbridge v. Staveland, 1 Ves. 56.'' It was similarly held in the like case of Meres v. Chrisman, 46 Ky. 422, 7 B. Mon. 422. The examination of an adverse party as on cross-examination under the terms of Section 606-8, Civil Code of Practice, is, as a practical matter, an expedition of discovery to which the foregoing cases are particularly applicable. But we have recognized the rule of immunity in other civil cases. Robinson v. Neal, 21 Ky. 212, 5 T. B. Mon. 212; Louisville H. and St. L. Railway Co. v. Schwab, 127 Ky. 82, 105 S. W.

110; and Commonwealth v. Phoenix Hotel Co., 157 Ky. 180, 162 S. W. 823; Cooper v. Keyes, 246 Ky. 268, 54 S. W. 2d 933.

Therefore, though the parties may not be compelled to give self-incriminating testimony, they were and are in contempt of court as above described.

Accordingly, the writ of prohibition sought herein is denied.