BOARD OF EDUCATION OF ASHLAND SCHOOL DISTRICT et al., Appellants,

v.

Charles E. CHATTIN, Appellee.

Court of Appeals of Kentucky.

March 13, 1964.

W. H. Dysard, Dysard, Johnson & Welch, Ashland, for appellants.

H. David Hermansdorfer, Diederich & Hermansdorfer, Ashland, for appellee.

PALMORE, Judge.

The appellee, Charles E. Chattin, was employed as Director of the Ashland Area Vocational School from July 1, 1954 to July 14, 1961, during all of which time the school was under the control of the appellant school board and he was under the direction and supervision of its superintendent of public schools. In March of 1961 the superintendent notified Chattin by letter that he would not be recommended for re-employment as director of the vocational school for the year beginning July 1, 1961. On July 3, 1961, Chattin brought suit in the Boyd Circuit Court claiming entitlement to a continuing status under KRS 161.720 et seq. and asking to enjoin the school board and its individual members from discharging him without a hearing.

After commencement of the injunction suit the school board decided to proceed under KRS 161.790 and, by letters directed to Chattin on July 14, 1961, and July 24, 1961, listed the specific charges forming the basis for its decision to terminate his employment. A hearing conducted by the board on August 17, 1961, resulted in a formal order dismissing Chattin,[1] from which he appealed to the Boyd Circuit Court as authorized by KRS 161.790(5). The circuit court found the charges and proof insufficient to justify the dismissal. The school board and its members have appealed that decision to this court.

Although the injunction suit appears to have been left withering on the vine, in his statement of appeal from the action of the school board Chattin incorporated by reference the allegations of his injunction complaint. We do not find any order consolidating the two actions, but the papers of both are here as one record. The final judgment of the circuit court does not include injunctive relief, but it declares that Chattin has a continuing status and sets forth the conditions under which the school board and its members as individuals will be liable for the payment of his salary. All of this, say the appellants, is premature, because, among other reasons, until it was determined that the board had no right to

---

[1] The dismissal was made effective as of July 14, 1961. Meanwhile, Chattin had accepted temporary employment elsewhere.

discharge him it had neither the duty nor the opportunity of offering him another position;[2] thus the judgment says more than was necessary or appropriate. Since, however, we have concluded that the judgment should be reversed on the essential merits of the controversy it becomes unnecessary to pursue this aspect of the appeal.

■ All of the charges contained in the accusatory letters of July 14 and 24, 1961, can be fairly classified as either insubordination, inefficiency, or incompetence, these being among the legal causes for dismissal authorized by KRS 161.790. We shall not discuss all of the charges, as any one ground, if supported by substantial evidence, is sufficient. Hoskins v. Keen, Ky., 350 S.W.2d 467, 469 (1961).

Item 2 of the July 24 specifications was that the board had experienced "continual trouble getting you to make the financial reports required by the law and regulations. For example, on January 22, 1959, on instructions of the Board of Education, the Superintendent wrote you in regard to the monthly reports of the Ashland Vocational School. This was brought about by the fact that the December report had not been received early enough for the Board to study the report before acting upon it. It was important that these reports show receipts by the Vocational School for 'Sales of Merchandise and Materials' and 'Contracts and Projects.' You have never included in your monthly 'financial data sheet' any entry of these items."

■ Though Chattin took the position that none of the charges were sufficient to satisfy the statutory requirement that they be specified "in detail," this is one of three he "accepted" for purposes of the hearing.

The trial court held that all of the charges were defective because they did not set forth exact times and places and specific acts or omissions. However, we do not construe KRS 161.790(2) as requiring greater exactitude than a civil complaint. It is enough that the charges give fair notice of their essential nature and bases. If they are not sufficiently specific to enable the accused to prepare his case there is no reason he may not obtain the particulars by a timely demand. Without passing judgment on the other charges, we think the second charge contained in the July 24 letter was quite adequate. To the extent it may be considered in conflict, Bowman v. Ray, 118 Ky. 110, 80 S.W. 516 (1904), is overruled. The other cases cited by Chattin are not materially inconsistent with what we have said here.

■ The substance of the evidence supporting the second charge in the July 24 letter was as follows:

After discussions with state officials concerning the property accounting and financial records of the vocational school the board in 1958 caused an audit to be made by a firm of certified public accountants. Chattin was disposed at first to balk at this imposition, and telephoned a state official at Frankfort to know if it was authorized. He was referred to his superior officer, Mr. Shattles, the local school superintendent.[3] When the auditor desired to check certain material inventories, Chattin felt that he was trying to conduct an "investigation" instead of an audit and would not let him do so until Shattles was called. Shattles and the chairman of the school board went to the vocational school in order to settle the matter, whereupon the audit was completed without further incident.[4]

---

2. The letter written to Chattin in March of 1961 did not suggest the possibility of continued employment in another position. However, it was specifically mentioned in the letter of July 14, 1961.

3. Under applicable regulations then in force the director of the vocational school was responsible to the local school superintendent.

4. These events form the basis of another of the charges, but provide relevant background to the charge under discussion.

The audit resulted in findings that the records of the school were inadequate, and recommendations were made for their improvement. Accordingly, several changes were effected but it was not possible to carry out the recommendations fully because Chattin eventually said they required a great deal of work and he did not have the necessary clerical help. Therefore, Shattles endeavored to simplify the reporting procedures and had printed some forms which he asked Chattin to use. One of these forms styled "Financial Data Sheet" for the month of November, 1959, was filed with the testimony given at the hearing. It divided cash receipts into four categories, (1) Tuition, (2) Sales of merchandise and materials, (3) Contracts and projects, and (4) All other receipts. On this specimen of November, 1959, the cash receipts totalling $3,540.61 were itemized as "Tuition" $1,850 and "All other receipts" $1,690.61. Items 2 and 3, "Sales of merchandise and materials" and "Contracts and projects," were left blank. Chattin testified that his practice was to lump them together under Item 4, "All other receipts," because he did not consider the school as a "business." [5] He admitted that he and Shattles had discussed this particular report form when it was devised, and obviously he filled it out and submitted it every month. Yet on the witness stand he professed to believe it was merely a sheet for Shattles' own personal records, and "No one ever explained to me what it was supposed to mean." As we understand the testimony, he never did fill out items (2) and (3) of this monthly report.

Shattles testified that the subject of bookkeeping and inventory records had been a continuous problem between him and Chattin and that he had never been able to get Chattin to keep the cash records in the form he had devised for that purpose. Chattin's own testimony in this connection reveals unmistakable obstinancy and lack of candor. He could not have failed to understand the simple report we are now discussing; whether he agreed with its objects and purposes was immaterial. His was not the job of running the railroad. That belonged to Shattles and the school board. His failure to comply with the reasonable requirements of his superior officer constituted inefficiency or incompetence at best, and insubordination at worst.

It is our opinion that on the charge of failure to carry out instructions concerning the financial records of the vocational school the evidence was amply sufficient to sustain Chattin's discharge, and that the trial court erred in finding otherwise.

During the hearing one of the board members said, "We have never accused him of not being a good Vocational Director but we found that he will not do what we asked him to and we have decided that we are going to let him go." Counsel fastens on this remark as indicating that the Board's reason for wishing to dismiss Chattin was not founded on "substantial cause." We do not agree. Talent or even genius to the contrary, failure to comply with competent orders of a superior official is substantial cause for disciplinary action and, under the facts and circumstances of this case, for discharge.

In Guthrie v. Board of Education of Jefferson County, Ky., 298 S.W.2d 691 (1957), it was said that the findings of the trial court in a proceeding of this kind would not be set aside unless "clearly erroneous" within the meaning of CR 52.01. This conclusion was influenced by the conception that the review in circuit court is "quasi de novo," as contemplated by the terminology of KRS 161.790(5). However, more recently we have had occasion to reappraise the fundamental question of whether it is constitutionally possible for

5. From both the testimony and the monthly "Shop Fund Report" prepared by Chattin it is clear that the school received money for both materials and labor. There is no apparent reason why they could not easily have been separated for accounting purposes.

the judicial branch of government [6] to consider on a de novo basis the decision of an administrative agency of another branch of government, and have concluded that it is not. In short, a court cannot be made an organ of administrative policy or of administrative fact-finding in a matter not arising as a judicial question—that is, not originating within the courts. A de novo consideration necessarily substitutes the judgment of the court for that of the administrative agency, whereas the proper scope of judicial review in the area of factual and policy determinations is limited to the question of whether they are arbitrary, hence violative of Const. § 2. See American Beauty Homes Corporation v. Planning & Zoning Commission of Louisville & Jefferson County, Ky., —— S.W.2d ——.

■ In Hoskins v. Keen, Ky., 350 S.W.2d 467, 469 (1961), the substance of our decision was that if the action of a school board in discharging its superintendent for cause pursuant to KRS 160.350 is supported by substantial evidence it cannot be set aside by a court.[7] This is but another way of saying that a decision so supported is not "arbitrary." Cf. Thurman v. Meridian Mutual Insurance Company, Ky., 345 S.W.2d 635, 639 (1961). The apparent attempt of KRS 161.790(5) to invest the court with a broader authority oversteps the line dividing the constitutional powers of government and is invalid. Cf. Const. § 27. American Beauty Homes Corporation v. Planning and Zoning Commission of Louisville & Jefferson County, supra. We hold that on the factual issues the circuit court is confined to the record of proceedings had before the administrative body and is bound by the administrative decision if it is supported by substantial evidence.

■ The "clearly erroneous" rule of CR 52.01 pertains to the review of findings of fact. Whether the action of an administrative body is supported by substantial evidence is a question of law. In such a case the rule does not apply to the review of this court, because the circuit court is not the fact-finding agency. To this extent Guthrie v. Board of Education of Jefferson County, Ky., 298 S.W.2d 691 (1957), is modified.

■ Lurking in the wings of this controversy are procedural questions that call for clarification. There were several charges which, having assumed the position that they were not specific enough to afford him a fair opportunity to defend, Chattin declined to discuss at all, even when put on the witness stand by the school board. (At one point he refused to admit his telephone number.) With all due respect to his "rights," we cannot approve this procedure. He had not been charged with a crime, nor was his refusal to give answers to various questions based on any suggestion or possibility of criminal involvement. His employer had the right to inquire into his official actions and to expect frank answers. Cf. KRS 160.300. On the assumption that orderly procedure is both essential to and a qualification of the fairness guaranteed by Const. § 2 (which fairness extends both ways, cf. Pritchett v. Marshall, Ky., 375 S.W.2d 253), it seems to us that they were entitled also to the benefit of discovery and amendment. Granted that it would have been better practice for the board to take his deposition or direct his appearance before it at some time prior to the hearing (which we think it certainly had a right to do), yet it was made clear to him that if developments should occur in the course of the hearing necessitating further evidence the hearing would be adjourned and an opportunity given him to produce it. The object of the hearing required by KRS 161.790(5) is to get the facts into the open. That it must be conducted by laymen forbids the esoteric formalities of a medieval jousting match.

6. Meaning the government established by the Constitution of Kentucky.

7. This assumes, of course, that the person discharged was given a fair opportunity to be heard.

Some doubt exists with regard to the fundamental fairness of a hearing before a tribunal that has already decided the outcome. As we see the problem, however, the object of this particular type of hearing is not so much to persuade the board one way or the other as it is to challenge the existence and force proof of reasonable grounds to sustain the decision, whether or not it has been reached already, and to create a record on which it may be tested for arbitrariness.

The cause is reversed with directions that a judgment be entered sustaining the action of the Board of Education.

MONTGOMERY, Judge (dissenting).

In my judgment the majority opinion is wrong. It is wrong in principle in so far as it seeks to extend the decision in American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission, Ky., —— S.W.2d ——. It is wrong again when it incorporates admitted dictum which is unsound.

The American Beauty Homes case stands for the proposition that the Legislature cannot by statute require the Court to hear de novo a matter previously determined by a planning and zoning commission in the exercise of a legislative function. Under the doctrine of separation of powers of government, the legislature cannot foist upon the judiciary the exercise of such legislative powers. This was the holding in the American Beauty Homes case. General statements therein which indicate the broad application of the rule to administrative matters and boards are dictum and should not be taken as a basis for the decision in the majority opinion.

Further, the majority opinion gratuitously indicates that generally the proceedings before a school board should be governed or conducted in conformity with the Kentucky Rules of Civil Procedure. Specific suggestions referred to a bill of particulars and a so-called clarification of procedural questions. Appellee's refusal to answer certain questions was also condemned. None of these propositions is supported by any citation or authority, but all rest upon broad statements of dictum for their soundness.

Appellee's conduct with reference to certain financial reports and his management of certain financial affairs were under examination by the School Board. Conceivably, criminal or civil liability may have attached to him. At least he loses his employment under this decision.

The majority opinion indicates that unless he had been charged with a crime he was not entitled to refuse to answer certain questions under a claim of privilege of immunity as a witness under Kentucky Constitution, Section 11. In Rutherford v. Commonwealth, 59 Ky. (2 Metcalfe) 387, it was held that inasmuch as the answers to certain interrogatories might have subjected the witness to a criminal or penal prosecution "he was not bound to answer them." The rule extends to civil cases as well as to criminal cases, and it is not necessary that the witness be examined in the course of a penal or criminal prosecution. Akers v. Fuller, 312 Ky. 502, 228 S.W.2d 29. It is a shield and protection available to all persons summoned as witnesses. Young v. Knight, Ky., 329 S.W.2d 195, 77 A.L.R.2d 994. In a fuller discussion of the principle by Rees, J., in the Akers case, quoting from Kindt v. Murphy, Judge, 312 Ky. 395, 227 S.W.2d 895, it is stated that "the privilege extends to all manner of proceedings in which testimony is to be taken." The majority opinion, taken on its face, would deprive the witness of this sacred constitutional right with one broad unfounded assertion.

The dictum concerns the bill of particulars and further indicates that the Board in its hearing, held pursuant to statute, was "entitled also to the benefit of discovery and amendment." In substance the majority opinion indicates that the Kentucky Rules of Civil Procedure should control the conduct of such a preliminary hearing.

The school board is a creation of legislative enactment. The regulations for the conduct of its affairs must be based on statutory authority. Its right to conduct hearings and the method of so doing should be done in accordance with statutory authority; hence, I consider it outside the function of the judiciary to suggest or tell this creation of the legislature that it should conduct a hearing in accord with the Kentucky Rules of Civil Procedure.

The inconsistency of this Court in doing so was never more apparent. In the American Beauty Homes case, earlier referred to, a statute which undertook to impose on the judiciary a legislative function was held unconstitutional as a violation of the doctrine of separation of governmental powers. The matter is thoroughly and adequately condemned therein. Again, in City of Covington v. Meyer, Ky., 376 S.W.2d 679, the Court by its original opinion approved another expression of the same doctrine in upholding a statute in these terms:

> "Conceding the improvidence of such a law, we cannot for that reason ignore or evade it. We are constitutionally unable to substitute our judgment of what is wise for that of the legislature." *

I cannot agree with the dictum in the majority opinion by which the judiciary undertakes to foist upon a legislative creation, performing an executive function, the use of the Kentucky Civil Rules of Procedure in the face of two such strong opinions on the separation of governmental powers rendered on the same day.

* (Subsequently deleted from the original opinion).