## Tucker et al. v. Commonwealth ex rel. Attorney General.

Jan. 26, 1945.

Rogers & Rogers, Daniel W. Davies, and Sawyer A. Smith for appellants.

Eldon S. Dummit, Attorney General, and Elmer Drake and M. J. Sternberg, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This appeal is from a judgment entered by Hon. John L. Vest, as Special Judge of the Campbell Circuit Court, finding Samuel A. Tucker and Julius L. Plummer guilty of contempt of court and ordering them confined in the county jail until they purge themselves of such contempt by producing and delivering to the Clerk of the Campbell Circuit Court 41 slot machines which had been taken into custody by police officers upon raiding a gambling resort known as the "Beverly Hills Country Club," which will be hereinafter referred to as the Club.

On Sept. 17, 1943, Hon. Hubert Meredith, then Attorney General of Kentucky, verified a petition in equity which three days later, on Sept. 20th, was filed in the Campbell Circuit Court. The Commonwealth on relation of the Attorney General was named as plaintiff and a large number of operators of alleged gambling resorts in Newport and in Campbell County and practically all officials of the city and county were named as defendants. The petition is rather long and describes with particularity each alleged gambling resort and names the persons operating it and the games of chance indulged in on the premises, and avers that evil disposed persons of both sexes congregate on the premises, en-

gage in gambling and drinking which constitutes a public nuisance. The Club is described in the petition and it is averred that Samuel A. Tucker, John Croft and others operate a gambling resort there. Among the officers named in the petition are Julius L. Plummer, Chief of County Patrolmen, and two highway patrolmen, George Benz and Robert L. Rickels. The petition further alleges that Hon. Ray L. Murphy, the regular Circuit Judge of the Campbell Circuit Court, was then absent from the county and the Commonwealth and there was no judge of similar jurisdiction in Campbell County. An injunction was asked abating the nuisance and seizing the gambling paraphernalia and compelling the officers to enforce the laws of the Commonwealth against gambling.

Immediately after the petition was filed on Sept. 20th, attorneys representing the Commonwealth took it before Hon. C. D. Newell, Circuit Judge of the Nineteenth Judicial District, and obtained a temporary restraining order from him upon the verified allegations of the petition that the regular circuit judge was out of the State. The restraining order enjoined Tucker and others from conducting games of chance and ordered Plummer, Benz and Rickels and other officers to enforce the laws of the Commonwealth against gambling and to seize all gaming equipment in the Club forthwith and deliver it to the Clerk of the Campbell Circuit Court.

At 1:30 A. M. on Sept. 21st, this restraining order was placed in the hands of Kenneth Collins, a policeman of the City of Newport. About 30 minutes later he, with two county patrolmen, George Benz and Robert Rickels, executed it by delivering a copy thereof to John Croft, manager of the Club, and by taking into custody all gambling paraphernalia in the Club, including 41 slot machines located in the barroom which was leased and operated by Tucker, who received a percentage of the earnings of the slot machines as compensation for permitting them to be operated in his barroom.

Collins left the slot machines and other gambling equipment at the Club in the custody of the two county patrolmen, Benz and Rickels, and returned to Newport. One of these patrolmen telephoned their chief, Plummer, who arrived at the Club at 3 A. M. and left at 5 o'clock, telling the two patrolmen to guard the para-

phernalia. About 5 o'clock Tucker went from the Club to his home, leaving the slot machines in the custody of the officers, and did not return to his bar until noon. Benz and Rickels were night patrolmen and before going off duty at the usual hour of 6:30 A. M., Benz telephoned Walter Sweeney, another county patrolman, who went on duty at 6:30 in the morning. Sweeney came to the Club to relieve Benz and Rickels, who left him in charge with instructions to guard the gambling devices and to call Chief Plummer at 7:30 A. M., and report his whereabouts, as was customary.

Sweeney telephoned his chief at 7:45 and Plummer inquired if Sweeney had received any orders except from the two patrolmen he relieved, or if he had received any papers. Upon Sweeney replying that he had not, Plummer directed Sweeney to meet him at his office at the usual time, which was between 8 and 8:30, when he would meet the Chief to make reports and receive orders. Sweeney met Plummer at the latter's office around 8:15 that morning, turned in his mileage report and remained with Plummer until 9:30 A. M., when Plummer sent him back to the Club, at which place he arrived at about 9:45. Plummer testified he did not ask Sweeney about the seized gambling devices, saying he assumed the raiding officers had by then carried them in town.

Herbert Lukens, a newspaperman, went out to the Club around 9:30 that morning to take pictures of the gambling paraphernalia caught in the raid. Just as he drove up he met a large truck leaving the grounds containing the paraphernalia but, thinking that it was being hauled in by the officers, he did not get the license number of the truck. When Lukens got to police headquarters he inquired of Plummer if the latter had the equipment removed. Upon receiving a negative reply, he informed Plummer that it had been taken from the Club by some one. Plummer then got in touch with Sweeney at the Club by telephone, directing him to check on the equipment which the latter immediately did and reported to Plummer that none of it was in the Club. Sweeney in guarding the equipment remained outside the building near his car so that he might receive police calls by a radio with which his car was equipped.

Subsequent to learning of the removal of the gamb-

ling equipment from the Club, the court, upon motion and affidavit of attorneys representing the Commonwealth, issued rules against Tucker and Plummer to show cause why they should not be punished for contempt in violating the restraining order in removing, or permitting to be removed, the 41 slot machines from the Club.

Defendants moved to quash the capias upon which they were arrested on the ground that the restraining order which they were charged with violating was void due to the lack of authority of Judge Newell to grant it. This motion was overruled and responses were filed denying that defendants, or either of them, owned or had any interest in the slot machines or that they had any part, directly or indirectly, in removing same from the Club or that they knew who did remove them or their present whereabouts. Replies were filed controverting the responses and considerable proof was taken and the court made the rules absolute and held both defendants in contempt.

The judgment recites that the slot machines were left by the officers in the barroom under the control of Tucker and that the facts show they could not have been removed therefrom without his active participation or passive permission; that Plummer did not explain why Sweeney was called from the Club and remained in the Chief's office for practically an hour and a half, during which time the machines were removed. It ordered both defendants held in civil contempt of court and that they be confined in the county jail until they, or either of them, purged the contempt by producing or causing to be produced and delivered to the clerk of the court the 41 slot machines removed from the Club. Each defendant moved the court to set aside the judgment holding him in contempt and each filed an affidavit setting out that he had no connection with the removal of the slot machines, did not know who removed them or who had the machines or where they were and that it was impossible for him to produce them. The motions were overruled and defendants were granted an appeal.

The grounds assigned for reversal are: (1) That the restraining order was void; (2) that the city policeman, Collins, had no authority to execute it outside of the City of Newport; (3) that the restraining order was not

served on the defendants; (4) if there were any contempt, it was criminal and not civil, and the court under KRS 432.260 was without authority to inflict punishment greater than, a fine of $30 or imprisonment for more than 30 hours without the intervention of a jury; (5) the evidence does not justify defendants being held in contempt and the statements in the affidavits that they had nothing to do with the removal of the slot machines and did not know their whereabouts showed it was impossible for defendants to produce them, therefore the contempt was purged.

It is stated in defendants' briefs that the record discloses Judge Murphy was in the county when the petition was verified on Sept. 17, and although he was not within the county when it was filed on Sept. 20th, the affidavit speaks of the time when it was verified and not of the time it was actually filed, and Judge Newell was without authority to issue the restraining order and it is void. Defendants are mistaken in this statement. The schedule shows that only certain parts of the record were brought here, and we do not find in it anything dealing with Judge Murphy's absence except the averment in the verified petition that he "is now absent from Campbell County and from the Commonwealth of Kentucky, and there is no circuit or other judge of similar jurisdiction present in Campbell County". Thus the affidavit was sufficient to give Judge Newell jurisdiction to grant the restraining order. Civil Code of Practice, secs. 273 and 276; Scott v. Singleton, 171 Ky. 117, 188 S. W. 302; Harris & Co. v. Lewis, 235 Ky. 810, 32 S. W. 2d 401.

Defendants insist that Collins, a policeman of the City of Newport, had no authority to execute the restraining order at the Club which was beyond the limits of the city, citing Brittain v. United States Fidelity & Guaranty Co., 219 Ky. 465, 293 S. W. 956, therefore defendants were not in contempt even though they violated the order. With this we cannot agree. The only inquiry in such a case is whether the court had jurisdiction to grant the restraining order and it is not whether it was erroneously issued or improperly served. Here, the court had jurisdiction and the restraining order was entitled to implicit obedience until revoked. 12 Am. Jur. sec. 26, p. 407; Crook v. Schumann, 292 Ky. 750, 167 S. W. 2d 836; Howat v. Kansas, 258 U. S. 181, 42 S. Ct. 277,

66 L. Ed. 550; Burtch v. Zeuch, 200 Iowa 49, 202 N. W. 542, 39 A. L. R. 1349; Jackson v. Superior Court, 210 Cal. 59, 290 P. 448, 70 A. L. R. 475.

Nor was it necessary that the restraining order be served on defendants for them to be guilty of contempt for violating it. Defendants were parties to the suit, also they had actual knowledge of the restraining order and knew that the slot machines had been seized under it and the fact that they were not actually served with the injunctive process does not excuse them from violating the court's order. Civil Code of Practice, sec. 283; Watkins v. Mowbray & Robinson Co., 212 Ky. 118, 278 S. W. 557; 12 Am. Jur. sec. 27, p. 409. Even had defendants not been parties to the action, they would have been in contempt for violating the restraining order since they had knowledge of it. State of Washington, etc., v. Grady, 114 Wash. 692, 195 P. 1049, 15 A. L. R. 383, and annotations following.

We are not in accord with defendants that any contempt of which they were guilty was of a criminal and not of a civil nature. A civil contempt is failing to do what is ordered by the court in a civil action for the benefit of the opposing party, while a criminal contempt is an act or conduct against the dignity or authority of the court, or the judge acting judicially, which obstructs justice or tends to bring the court into disrespect. 17 C. J. S., Contempt, secs. 5 and 6, pp. 7, 8; Adams v. Gardner, Judge, 176 Ky. 252, 195 S. W. 412. There are some acts which contain elements both of a civil and of a criminal contempt and it becomes difficult to determine to which class a particular contempt belongs, 17 C. J. S., Contempt, sec. 5, p. 7, as it may partake of the characteristics of both. State v. Bland, 189 Mo. 197, 88 S. W. 28, 3 Ann. Cas. 1044. Under the facts presented in the case at bar, defendants might have been properly proceeded against for a civil contempt or a criminal contempt. Graham v. Williamson, 128 Tenn. 720, 164 S. W. 781. Section 436.280, KRS, allows the Commonwealth, upon conviction of one setting up or keeping gaming contrivances, to forfeit the contrivances for the benefit of the State or to destroy them. It would appear that the restraining order directing the seizure of these slot machines was for the benefit of the Commonwealth, which was plaintiff in the civil action in which it was issued, hence we hold that this proceeding was one of civil and

not criminal contempt. Allen v. Black Bus Lines, 291 Ky. 278, 164 S. W. 2d 482.

The evidence shows the facts as stated in this opinion, and we will not review it. Suffice it to say that it is amply sufficient to sustain the judgment. When Tucker did not interest himself in ascertaining who took these 41 slot machines operated in his barroom, the earnings in which he shared, or attempt to locate their present whereabouts, and when Plummer as Chief of the County Patrolmen called away one of his men, Sweeney, who was guarding the machines, and kept him in his office for practically an hour and a half, during which time the machines were taken, without an explanation for his conduct except that it was routine, a judge cannot close his eyes to the realities of the situation and say these defendants did not acquiesce, to say the least, in the removal and the concealment of the machines merely because they deny participating in removing same or any knowledge of the present whereabouts of the machines.

Defendants are correct and are sustained by authorities cited that the inability of the contemner, without fault on his part, to obey the order holding him in contempt is sufficient to purge him of the contempt charged. 12 Am. Jur. sec. 72, p. 438; Rudd v. Rudd, 184 Ky. 400, 214 S. W. 791; Allen v. Woodward, 111 Tex. 457, 239 S. W. 602, 22 A. L. R. 1253. But where the contemner "has voluntarily or contumaciously brought on himself disability to obey an order or decree, he cannot avail himself of a plea of inability to obey as a defense to a charge of contempt." Like the trial judge, we do not think it is impossible for defendants to produce these machines, and we believe their failure to do so is a continuing contempt on their part.

The judgment is affirmed.