RENDERED:  AUGUST 26, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0469-MR

TRACY R. VIA (N/K/A TRACY R.                    APPELLANT
GRAY)

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE BRANDI H. ROGERS, SPECIAL JUDGE
ACTION NO. 16-CI-00032

GARY B. VIA                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Tracy Gray, formerly Tracy Via, appeals from an

order of the McCracken Circuit Court holding her in contempt for failing to

comply with her marital settlement agreement, the terms of which were

incorporated into the divorce decree entered by the circuit court.  As the circuit

court acted appropriately in accordance with its civil contempt powers, we affirm.

Tracy and Gary Via were married on August 31, 1996. Tracy filed for divorce on January 15, 2016. Tracy and Gary were both represented by counsel and ultimately entered a marital settlement agreement (the settlement). On August 31, 2016, the circuit court entered a dissolution decree which specifically incorporated the settlement, stating as follows:

> The Marital Settlement Agreement entered into by and between the parties wherein and whereby all matters pertaining to division of property, maintenance, and payment of debts, have been agreed upon, is made a part of this Decree; and the parties are bound by the provisions thereof and are ordered and directed to comply therewith.

> The settlement required Gary to pay $900 per month in maintenance

to Tracy for a period of three years, beginning September 2016 and ending September 1, 2019. However, the settlement also recognized that Tracy had an expectation of receiving a substantial inheritance in the near term which could, potentially, make continuing maintenance payments inequitable. Specifically, the settlement states in relevant part:

> In the event TRACY receives any inheritance, the parties acknowledge that inheritance shall be characterized as TRACY'S non-marital property. GARY shall have no claim to any inheritance other than that he reserves the right to request a modification of his maintenance obligation in the event the inheritance is significant enough to make the current obligation unconscionable.

And further:

The parties acknowledge TRACY has an expectancy of an inheritance. TRACY shall be under an obligation to provide GARY formal written notice within seven (7) days of the receipt of said inheritance or the denial of said inheritance, whichever the case may be. GARY shall be entitled to file a motion any time after June 1, 2017 seeking to modify the maintenance in the event the inheritance is of sufficient size to make the current award unconscionable.

The material facts of what occurred after the settlement and decree were entered are not in dispute. Gary, as required, began making $900 monthly payments to Tracy beginning in September 2016. In December 2018, Tracy received $430,000 in inheritance proceeds. While substantial, this payment was not the entirety of the inheritance Tracy would ultimately receive and the estate was not closed. Tracy did not inform Gary that she had received those funds. Being unaware of Tracy receiving any inheritance, Gary did not file a motion seeking to modify his maintenance obligation at that time. Gary continued to dutifully pay maintenance, and Tracy continued to accept those payments.

Approximately five months later, in May 2019, Gary was informed by Tracy's stepfather of the inheritance dispersal. On June 13, 2019, Gary filed motions to modify maintenance which were set to be heard in September 2019. Gary continued to pay maintenance while his motions were pending. In September, the circuit court determined that Gary's motion was moot insofar as his

maintenance obligation ended, in accord with the settlement, on September 1, 2019.

Thereafter, Gary moved for a finding of contempt on the part of Tracy for violating the terms of the settlement and sought reimbursement of the monthly payments he had made from January 1, 2019, through September 1, 2019. Tracy in turn argued that the $430,000 she received was only a "partial payment" and that she owed no duty to inform Gary until the estate was finalized.

Following a hearing, the circuit court entered an order finding Tracy in contempt and determining the proper sanction to be an amount equal to the repayment of the nine months of maintenance ($8,100) she had received following receipt of $430,000 from the estate. Tracy filed a motion to alter, amend, or vacate arguing that the circuit court had effectively ordered a retroactive modification of maintenance in violation of Kentucky Revised Statutes (KRS) 403.250. She also claimed that if any reimbursement was required, it should only have applied to the period after Gary filed his motion. Lastly, Tracy claimed that her failure to notify Gary was the result of a "misunderstanding or a difference of interpretation" regarding the language found in the agreement and therefore, her actions could not "rise to the level of contempt." The circuit court denied her motion and Tracy appealed.

We begin our review recognizing that our courts are afforded wide latitude in the use of their contempt powers to enforce their judgments and remove any obstructions to their enforcement. *Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky. 1970). We will not disturb a circuit court's exercise of its contempt powers on appeal absent an abuse of that discretion. *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky.App. 2007).

On appeal Tracy offers two arguments. First, she argues that there was an ambiguity in the agreement regarding her duty to notify Gary. Second, she argues the circuit court was not permitted to effect a retroactive modification of maintenance by compelling her to reimburse Gary for payments he had made before he filed his motion.

Tracy's first argument actually has three components. Initially she argues that the circuit court found her in criminal contempt and, thereafter, argues that her conduct could not be described as evincing the required *mens rea* of willfulness or "conscious purpose to disobey the authority of the court" necessary to sustain criminal contempt. *Cabinet for Health & Family v. J.M.G.*, 475 S.W.3d 600, 620 (Ky. 2015). Tracy is incorrect on this point. Our courts' powers of contempt are separable into two distinct categories: civil and criminal. Civil contempt is a failure to do what is ordered by the court in a civil action for the benefit of an opposing party, while criminal contempt is some action by a party

that offends the dignity or authority of the court or the judge which obstructs justice or tends to bring the court into disrespect. *Tucker v. Commonwealth ex rel. Att'y Gen.*, 299 Ky. 820, 826, 187 S.W.2d 291, 294 (1945). The essence of criminal contempt is its intent to punish an individual for disrespect shown to the court while the spirit of civil contempt is its coercive effect upon litigants to comply with court orders. *See, e.g.*, *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996) *as modified on denial of reh'g* (Jun. 19, 1997). In this case it is clear that the circuit judge held Tracy in *civil* contempt, as it was not some offensive behavior directed at the court which prompted the court, but rather, Tracy's failure to follow the court's decree which had adopted the terms of the settlement.

As to the alleged ambiguity in the settlement, Tracy argues that she was not required to inform Gary of the inheritance sums she received because she had not received the "full inheritance" she would ultimately acquire, and that the settlement would have stated "any" or "a portion" if she was required to inform Gary of the receipt of only a part of her inheritance.

As an initial matter we recognize that the settlement did not, as a matter of law, in any way state or imply that Tracy was not responsible for informing Gary until she had recovered "all" of her inheritance or that the estate would need to be concluded prior to her being responsible for informing Gary.

Conversely, the settlement is clear that Gary's responsibility to pay maintenance to Tracy would not end based merely upon Tracy receiving "some" inheritance. At the time of the settlement, both the timing and amount of inheritance Tracy would receive were unknown. According to the settlement, the circuit court (pursuant to KRS 403.250(1)) would be the final arbiter of whether Gary would pay a reduced amount, or stop paying maintenance altogether, once Tracy received inheritance monies from the estate.

The goal of any court in interpreting a contract is to ascertain and to carry out the original intentions of the parties. *Wilcox v. Wilcox*, 406 S.W.2d 152, 153 (Ky. 1966). In that context, this Court notes that the $430,000 that Tracy received in inheritance was more than 13 times the cumulative sum of $32,400 in maintenance afforded by the settlement. This Court can envision no circumstance where any party to a settlement, worded such as this one, would not consider income of such magnitude to be a "substantial" change in circumstances under KRS 403.250(1) which would have, and should have, afforded Gary the opportunity to request modification from the circuit court. Tracy's refusal to inform Gary denied him the opportunity – to which he was entitled per the settlement – to make a timely motion to modify maintenance.

We are also mindful of the fact that within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the

parties thereto a duty to do everything necessary to carry them out. *Ranier v. Mount Sterling National Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Even were this Court to be persuaded that a potential ambiguity existed within the settlement's language, or that Tracy's inheritance was not clearly a substantial change in circumstances, her conscious decision to not inform Gary, or to seek the guidance of the circuit court, exhibited a lack of candor wholly contrary to her obligations of good faith and fair dealing.

Within her argument alleging that an ambiguity in the settlement insulates her from the circuit court's contempt powers, Tracy also asserts that the advice of her counsel serves as a defense. We can assume for purposes of this argument that Tracy, in a timely manner, informed her attorney that she had received a large sum of money from the estate and was advised by counsel that she need not inform Gary. Regardless of such incorrect advice, advice of counsel is not a defense in matters of civil contempt as in the case before us.

Advice of counsel serves to immunize a defendant from an allegation of lack of probable cause as an element of malicious prosecution claims. The advice of counsel defense is customarily applicable to situations where an aggrieved party seeks the advice of an attorney and presents to him fairly and accurately all the relevant facts, after which the attorney counsels the party on whether or not to file or prosecute a civil or criminal complaint. *See, e.g., Flynn v.*

*Songer*, 399 S.W.2d 491 (Ky. 1966); *Reid v. True*, 302 S.W.2d 846 (Ky. 1957); *Puckett v. Clark*, 410 S.W.2d 154 (Ky. 1966).

Furthermore, the settlement was a contract. The advice of counsel cannot serve a defense to an action for breach of contract. Were it otherwise, all contractual parties could void their agreements merely by finding one attorney to "rubberstamp" their own personal interpretations of the contract's terms.

Lastly, Tracy argues that the circuit court was not permitted to affect a retroactive modification of maintenance since any order modifying maintenance may only have prospective application. *Combs v. Combs*, 787 S.W.2d 260 (Ky. 1990). Such argument would be correct if that is what had actually occurred.

Here the circuit court found itself faced with an injustice wholly of Tracy's making. Tracy's decision to not inform Gary of her inheritance was self-serving and denied Gary the right, specifically set forth in the settlement, to seek modification in a timely manner. The only means by which the circuit court had to correct Tracy's breach of the settlement, and to truly enforce the court's original judgment decree, was through its civil contempt powers. It was an appropriate exercise of such powers to require Tracy to pay Gary an amount equivalent to those sums which she had accepted but to which she was not entitled. If we were to permit the rule against retroactive modification of maintenance to apply in circumstances such as this, we would not only materially limit courts' powers of

contempt but would encourage the lack of candor evidenced herein all to the detriment of the judiciary's inherent power to enforce its judgments. This we will not do. As stated in *Murphy v. Commonwealth*, 50 S.W.3d 173, 186 (Ky. 2001), "[i]f the courts are to have the power to control participants in the judicial process and effectively administer justice, the power of contempt must be more than a hollow threat." The fact that the amount of the contempt sanction matched the amount of the unwarranted maintenance payments does not constitute a retroactive modification of maintenance.

We find no abuse of discretion in the circuit court's finding of contempt. The court's sanction requiring the repayment of an amount equivalent to the maintenance accepted by Tracy following the receipt of her inheritance was proper and not violative of either statute or the court's powers.

ALL CONCUR.

BRIEF FOR APPELLANT:

Jeffrey P. Alford
Paducah, Kentucky

BRIEF FOR APPELLEE:

Heather L. Jones
Paducah, Kentucky